Robert William THOMAS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 13465.

United States Court of Appeals
Sixth Circuit.

Jan. 21, 1959.

John A. Carnahan, Columbus, Ohio, for appellant.

Loren G. Windom, Asst. U. S. Atty., Columbus, Ohio (Hugh K. Martin, Columbus, Ohio, on the brief), for appellee.

Before SIMONS and MILLER, Circuit Judges, and THORNTON, District Judge.

THORNTON, District Judge.

The appellant was convicted by a jury in the Eastern Division of the Southern District of Ohio on a one-count indictment charging him with a violation of Section 1461 United States Code, Title 18, in that he did knowingly deposit for mailing in the United States mails an obscene and filthy letter addressed to Miss Ruth Ann Wilson of Vienna, West Virginia.

 The appellant's complaint of his conviction brings into focus a question of statutory interpretation, which, if resolved in his favor, should result in a reversal of the judgment of the District Court. He contends that the 1955 Amendment to Section 1461 expressly

eliminated a private letter between two individuals as one of the vehicles by which the crime may be committed, and the appellant supports his contention with the observation that the word "letter" appears only once in the statute as amended, while it appeared three times in the statute before its amendment, and that "Congress seems to have gone to great pains to make it plain that a letter no longer falls within the proscription of the statute."

The section of the statute that has relation to this controversy, prior to the amendment, read as follows:

"Every obscene, lewd, lascivious, or filthy book, pamphlet, picture, paper, letter, writing, print, or other publication of an indecent character; and * * *",

and was amended to read:

"Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance; and * * *."

The appellant now poses the query: "Is a private letter, an 'article', 'matter', 'thing', 'device', or 'substance' within the meaning of 18 U.S.C. 1461?" A simple answer to this inquiry is that any letter containing matter that is obscene, lewd, lascivious, indecent, filthy and/or vile is condemned by Section 1461 as being nonmailable matter and "shall not be conveyed in the mails or delivered from any post office or by any letter carrier."

If Congress, in amending Section 1461, intended that there should be no legal prohibition against sending a letter containing filthy matter through the United States mails then the appellant has a point; however, it is clear that Congress did not intend to relax the laws relating to the transmission of obscene and filthy matter by any public conduit.

The legislative history of the amendment is found in the U. S. Code Congressional and Administrative News 1955, page 2210, the pertinent parts of which are as follows:

"The Committee on the Judiciary, to which was referred the bill (S. 600) to amend title 18 of the United States Code, relating to the mailing of obscene matter, having considered the same, reports favorably thereon, without amendment, and recommends that the bill do pass.

"Purpose

"The purpose of the proposed legislation is to enlarge section 1461 of title 18, United States Code, so as to include within the prohibition of said section all matter of obscene nature, whether or not said matter had fallen within the more restricted definition contained in the statute.

\* \* \* \* \* \*

"Statement

"Section 1461 of the Criminal Code was enacted to prevent the mails from being used to corrupt public morals. To strengthen this purpose, this bill would substitute general words for the special classes now covered by the statute, in the belief that the intent of the law is, and properly should be, to strike at all obscene matter. The committee is of the opinion that the definition of prohibited matter should be enlarged as herein proposed so as to include all items whether or not specifically heretofore described.

"The subcommittee of the Committee on the Judiciary investigating juvenile delinquency in the United States reports that the nationwide traffic in obscene matter is increasing year by year and that a large part of that traffic is being channeled into the hands of children. That subcommittee recommended implementation of the present statute so as to prevent the using of the mails in the trafficking of all obscene matter. The passage of S. 600 will contribute greatly in the continuing struggle to combat juvenile delinquency and the corruption of public morals.

"The committee is of the opinion that this legislation is meritorious

and, therefore, recommends favorable consideration of S. 600.

"Attached hereto and made a part of this report is a letter of June 7, 1950, to the then Vice President of the United States from Postmaster General Jesse M. Donaldson, advocating this legislation:

\*    \*    \*    \*    \*    \*

" 'The Vice President,

" 'United States Senate.

" 'Dear Mr. Vice President: There is submitted herewith, for consideration by the Congress, a draft proposal of legislation to amend title 18, United States Code, relating to the mailing of obscene matter.

" 'A recent prosecution under the provisions of section 1462 of title 18, United States Code, has demonstrated the desirability of amending this statute in order to eliminate doubt as to its applicability over the depositing in interstate commerce of certain obscene matters not presently enumerated therein.   In the case of Alpers v. United States ([9 Cir.] 175 F.2d 137), the United States Court of Appeals, in reversing the conviction of the defendant in the district court for depositing obscene phonograph records with an express company for carriage in interstate commerce, held that since phonograph records are not specifically enumerated in the statute, the depositing of such articles for carriage in interstate commerce even when of an obscene, lewd, lascivious, or filthy character does not constitute a violation of the statute.   In arriving at this conclusion, the court of appeals pointed out that had Congress intended the statute to be all-inclusive, it very readily could have eliminated mention of the special classes covered by the statute and employed the general words "any obscene or indecendent * matter." '

" 'The decision of the court of appeals was reversed by the Supreme Court of the United States on February 6, 1950 (U. S. v. Alpers, No. 217 [338 U.S. 680, 70 S.Ct. 352, 94 L.Ed. 457]) by a split decision of 5 to 3, the majority holding that "the portion of the statute here in issue does prescribe * the dissemination of matter which, in its essential nature, communicates obscene ideas. We are clear, therefore, that obscene phonograph records are within the meaning of the act."

" 'A bill (S. 2811) to amend section 1462, title 18 United States Code, to include filthy phonograph records, and the like, has been reported by the Senate Committee on the Judiciary.   In Report No. 1305, to accompany S. 2811, the committee referred to the decision in the Alpers case, and stated:

" ' "The fact that the lower court ruled one way, the Supreme Court sustained their view by a split decision of 5 to 3, and the intermediate court (the court of appeals) took the opposite view, clearly points up the fact that there is substantial and responsible difference of opinion on this matter.

" ' "The committee feel that no one can contend that obscene and indecent records or sound transcriptions should be permitted in interstate commerce and as long as there is any reasonable question in the mind of anyone that such prohibition exists, such doubt should be removed by the passage of this bill."

" 'The comments of Senate Committee Report No. 1305 with respect to the need for amending section 1462 of title 18, United States Code, have equal applicability to the necessity for amending section 1461 of the same title, relating to the mailing of obscene matter.

" 'It is believed that the draft proposal of legislation submitted here-

* (Sic.)

with under which it is proposed to substitute general words for the special classes now covered by the statute, will be inclusive enough to cover phonograph records, and any other matter of obscene nature, and at the same time include everything now covered by the statutes.'
\* \* \* "

In analyzing the foregoing legislative history of the amendment, it is readily apparent that Congress intended to amend Section 1461 so as to include within the prohibition of the statute any and all matter of an obscene, lewd, lascivious, indecent, filthy and/or vile nature, and it is further apparent that Congress, by the amendment, had no intention of withdrawing from the operation of the statute a filthy letter sent through the United States mails. The amendment simply provides a more comprehensive coverage as to the prohibitions contained in Section 1461.

■ Appellant further argues that, as a matter of law, the language contained in the letter is not within the purview of the legal definition of obscenity, and that the trial judge erred when he considered there was a factual question present and submitted it to the jury for determination. The indictment describes the contents of the letter as "obscene and filthy." Tyomies Pub. Co. v. United States, 6 Cir., 211 F. 385, 390, has the following to say:

"The trial judge submitted the issue, as to whether or not this picture was filthy, to the jury, saying:

" 'By the term "filthy" is meant what it commonly or ordinarily signifies; that which is nasty, dirty, vulgar, indecent, offensive to the moral sense, morally depraving and debasing.'

"We consider that this question was properly submitted to the jury." [See also United States v. Roth, 2 Cir., 1956, 237 F.2d 796, 800.]

Since the appellant makes no complaint here charging the trial court with a failure to properly instruct the jury, we are not called upon to consider the propriety of the instructions.

■ The appellant admitted that he was the author of the letter but denied that he either mailed it or caused it to be mailed, and claims that, since there was no substantial proof of mailing, the trial court should have directed an acquittal, or at least granted his motion for a new trial. The proof offered by the Government to establish the fact of mailing consisted of the following:

"Witness Ruth Ann Wilson,

\* \* \* \* \* \*

" 'Q. How did you receive that letter, Miss Wilson? A. At my home.

" 'Court: What was the answer? \* \* \* A. I got it at my home. It was sent to my home.'

\* \* \* \* \* \*

" 'Q. Now, Miss Wilson, this letter that you say that was mailed on or about August—well, mailed in August of 1956 from the defendant to you, you say you got that in the mail? A. I got it in the mail.

" 'Q. Where? A. At my house \* \* \*

" 'Q. Did you see the defendant put this letter in the mail box?

\* \* \* \* \*

" 'A. No, I didn't. But, I know he did.

" 'Q. You know he did?

\* \* \* \* \*

" 'A. He told me he did.' "

"Witness Alexander MacRae (Postal Inspector),

\* \* \* \* \*

" 'Q. Tell us anything he (the defendant) had to say about the case, Mr. MacRae, at any time?

\* \* \* \* \*

" 'A. At the time of the first interview, Mr. Thomas stated that he hadn't written the letter. After subsequent conversation he stated that it had been written by him at an address in Columbus and that he had mailed it when he was drunk.

At the time of the removal hearing in Parkersburg, West Virginia, * * *, he stated that the letter had been written by him but that it hadn't been placed in the mail; that he had personally delivered it in company with a friend of his named Bill Leisure * * *.' "

"Witness William Edward Leisure,

* * * * * *

" 'Q. Did the defendant Thomas ever deliver a letter either in an envelope or in open form to Ruth Ann Wilson in your presence?

* * * * * *

" 'A. No, sir.' "

"Defendant Robert William Thomas,

* * * * * *

" 'Q. Now, Mr. Thomas, I am going to show you something you have already seen, the Government's Exhibit No. 1, and ask you whether you wrote that letter? A. Yes, I did.' "

"Witness Ruth Ann Wilson,

* * * * * *

" 'Q. Miss Wilson, I hand you what has been marked Government's Exhibit No. 1. I ask you if at the time you received that letter, it was sealed in the envelope attached therein original condition? A. That's right.

" 'Q. Now, Miss Wilson, did or did not Mr. Thomas tell you he had mailed that letter? A. He did tell me.'

* * * * * *

" 'Q. When did he tell you that? A. When I saw him after he had come home.' "

Appellant admits that the indictment letter was postmarked.

"It is well settled that the fact that an envelop bears the postmark of a government postoffice is prima facie evidence that the envelop has. been in the mail." 25 A.L.R. 11. (See also United States v. Williams, C.C., 3 F. 484.)

The foregoing excerpts from the transcript, as set forth in the appellee's brief, demonstrate that substantial evidence was produced by the Government at the trial.

"We regard the circumstantial evidence summarized as sufficiently substantial to support the verdict of the jury finding appellant guilty as charged. On review, it is, of course, unnecessary that a federal appellate court should find from the evidence of record that the defendant had been proven guilty beyond a reasonable doubt. That is a criterion to be applied by the jury; and, where the jury's verdict has been upheld by the trial judge, the reviewing court should not set up its judgment against that of the jury and the trial court, except where there is no substantial evidence to support the verdict. Such is not the case here." Ramsey v. United States, 6 Cir., 1957, 248 F.2d 740, 741.

█ In his cross-examination of defendant-appellant, the assistant district attorney developed his prior felony record of four or five convictions. The appellant asserts that his character was not in issue, and that therefore no legitimate connection existed between the cross-examination of appellant concerning his prior convictions and the crime for which he was on trial; that there was never any attempt by the Government to elicit testimony explaining the exact nature of the felonies, or whether they were such that would affect appellant's veracity as a witness, "as assumed in the court's charge." No exception was taken to the trial court's instruction to the jury as to the consideration the jury should give to the prior criminal record of the defendant, and no complaint is made here about the trial court's instruction on this point. The record discloses that the trial court admonished the jury that this particular evidence should be used solely in testing the credibility of the defendant as a witness, and for no other purpose; that this type of evidence did not require the jury to believe or disbelieve the witness, but could be considered

by them as one of the factors in determining whether or not his testimony was worthy of belief. In an effort to exonerate himself of the charge made against him, the appellant testified that he wrote the indictment letter but that he did not mail it, nor cause it to be deposited for mailing; that he personally delivered it to the addressee, Miss Wilson, by handing it to her while in her company in Parkersburg, West Virginia.

"Appellant had, of course, testified as to facts tending to exonerate himself of the charges, and his credibility as a witness was certainly in issue. The evidence of prior convictions was restricted in the offer and in the charge to impeachment of appellant's credibility, and was admissible for that purpose." Newman v. United States, 5 Cir., 1955, 220 F.2d 289, 290.

■ In his closing argument, the assistant district attorney made this remark:

"This fellow nearly thirty, five time loser, enticing this little kid sixteen years old, from a good family, into a relationship which she testified to with him.

"Mr. Carnahan: I object."

The appellant implements his objection here with the statement that Miss Wilson's prior status and their prior relationship have no bearing on the case; that such status and prior relationship are not directly or indirectly established by the evidence, and could serve only to add to the jury's impression that appellant is a "bad" man who ought to be punished on general principles, whether or not he committed the crime for which he was on trial. The record discloses that different portions of the testimony brought out on both direct and cross-examination were utilized by the assistant district attorney in making up the alleged objectionable remark.

"It is of course permissible for the district attorney to ask the jury for a conviction. Nichamin v. United States, 6 Cir., 263 F. 880, 882. In doing so the district attorney has the right to summarize the evidence and urge upon the jury all reasonable inferences and deductions from the evidence." Henderson v. United States, 6 Cir., 1955, 218 F.2d 14, 19, 50 A.L.R.2d 754.

■ The appellant claims that prejudicial error was committed by the trial court in preventing his counsel from attempting to establish that Ruth Ann Wilson was testifying under duress, that she did not want to testify, and that her father was the moving force behind the entire prosecution. The indictment in this cause is entitled "United States of America vs. Robert William Thomas" establishing the United States of America as the moving party; the court file is not part of the record on this appeal, but we presume that the young lady was issued a subpoena to testify, which commanded her to appear in the United States District Court for the Southern District of Ohio, Eastern Division, and it is elementary that, under such conditions, she was testifying in response to the subpoena; the only other matter of concern to the jury is the truthfulness of her testimony and her demeanor as a witness; therefore, the appellant was not prejudiced by the trial court's action in restricting cross-examination on the aforesaid matter.

We find no errors in the present record which were prejudicial to the appellant.

Judgment affirmed.