CITIZENS FOR A BETTER ENVIRONMENT, Petitioner,

v.

ENVIRONMENTAL PROTECTION AGENCY, Douglas Costle, Individually and as Administrator of the Environmental Protection Agency, and George Alexander, Individually and as Regional Administrator, Region V, of the Environmental Protection Agency, Respondents.

No. 78–1042.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 29, 1978.

Decided Jan. 26, 1979.

Rehearing Denied May 16, 1979.

Bill S. Forcade, Milwaukee, Wis., for petitioner.

Jeffrey Gaba, Environmental Protection Agency, Washington, D. C., for respondents.

Before SWYGERT and SPRECHER, Circuit Judges, and GRANT, Senior District Judge.[1]

SWYGERT, Circuit Judge.

Petitioner, Citizens for a Better Environment ("Citizens"),[2] challenges the Environmental Protection Agency's ("EPA") approval of a State of Illinois water pollution program developed as part of the National Pollutant Discharge Elimination System ("NPDES"). We conclude that because the EPA failed to establish guidelines by which the adequacy of the Illinois provisions for public participation in the enforcement of the state program could be assessed, the EPA approval of the program failed to comply with the terms of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. §§ 1251 *et seq.,* and must be overturned.

The history and goals of the Federal Water Pollution Control Act and its amendments have been chronicled in numerous judicial opinions. *See, e. g., American Frozen Food Inst. v. Train,* 176 U.S.App.D.C. 105, 111–122, 539 F.2d 107, 113–24 (1976); *California v. EPA,* 511 F.2d 963 (9th Cir. 1975). Congress' ultimate objective was "to restore and maintain the chemical, physical,

1. The Honorable Robert A. Grant, United States Senior District Judge for the Northern District of Indiana, sitting by designation.

2. Citizens for a Better Environment is a non-profit corporation organized under the laws of the State of Illinois.

and biological integrity of the Nation's waters," § 101(a), 33 U.S.C. § 1251(a) (1977), and it established a permit program, the NPDES, to achieve this goal. Under this program, any pollutant discharge into navigable waters without an EPA authorization permit is banned, and the EPA was instructed to make the pollution controls inherent in its permits increasingly stringent over time.

Although the administration and enforcement of the permit program initially was vested entirely in the EPA, Congress intended that much of this authority would devolve to the states. See § 101(b), 33 U.S.C. § 1251(b). The Clean Water Act stipulates that any time after the promulgation of EPA guidelines establishing the minimum elements of state permit programs, a state may submit a description of a proposed program, along with a statement from the state attorney general that state law provides adequate authority to carry out the program, for evaluation by the Administrator of the EPA. If the state program satisfies the statutory requirements of section 402(b), 33 U.S.C. § 1342(b), and the guidelines issued under section 304(i), 33 U.S.C. § 1314(i), the Administrator must approve the program. The state would then assume primary responsibility for the issuance of permits and for the administration and enforcement of the NPDES program within its jurisdiction.

On July 8, 1977 Illinois submitted an application for authority to administer the NPDES program within the state. This proposal was approved by the Administrator of the EPA on October 23, 1977. On January 17, 1978 Citizens filed a petition to review this action pursuant to section 509(b)(1)(D) of the Act. 33 U.S.C. § 1369(b)(1)(D).[3] Citizens contends that the Illinois NPDES program should not have been approved because it lacks sufficient provisions for citizen participation in the enforcement of the program.

The EPA contends, on the other hand, that the Administrator has established adequate guidelines for state NPDES programs, see 40 C.F.R. Part 124, that the Illinois program satisfies not only these guidelines but also the statutory requirements of the Act concerning public participation in enforcement, see §§ 304(i), 402(b); 33 U.S.C. §§ 1314(i), 1342(b), and that, therefore, the Administrator's approval of the Illinois program must be upheld.[4] The EPA acknowledges that the Administrator has set no guidelines specifically requiring the provision of public participation in state NPDES enforcement, but argues that this is unnecessary and does not preclude approval of the Illinois program. The EPA position is that the provisions in the Act which discuss the EPA guidelines are extremely general and do not specifically require the Administrator to establish guidelines regarding public participation in state NPDES enforcement.[5]

3.  Section 509(b)(1)(D) provides:
    Review of the Administrator's action in making any determination as to a State permit program submitted under section 402(b)
    *     *     *     *     *     *
    may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts such business upon application by such person. Any such application shall be made within 90 days of such determination . . . or after such date only if such application is based solely on grounds which arose after such ninetieth day.
    33 U.S.C. § 1369(b)(1)(D).
4.  Citizens does not dispute the EPA's contention that the Illinois program meets the guidelines found in 40 C.F.R. Part 124, but instead argues that these guidelines are deficient with

respect to public participation in the state enforcement process.

5.  The statutory mandate for EPA guidelines regarding state NPDES programs is found in section 304(i), 33 U.S.C. § 1314(i):
    Guidelines for monitoring, reporting, enforcement, funding, personnel, and manpower
    *     *     *     *     *     *
    (i) The administrator shall . . . (2) within sixty days from October 18, 1972, promulgate guidelines establishing the minimum procedural and other elements of any State program under section 1342 of this title which shall include:
    (A) monitoring requirements;
    (B) reporting requirements (including procedures to make information available to the public);
    (C) enforcement provisions; and

The EPA is correct that these provisions are extremely general and, standing alone, would not indicate a Congressional mandate with respect to citizen participation in state enforcement proceedings. These provisions, however, must be construed in the context both of the statute read as a whole, *see United States v. Alpers*, 338 U.S. 680, 70 S.Ct. 352, 94 L.Ed. 457 (1950), and its legislative history. When that is done, it is clear that Congress intended that EPA guidelines would address, and state programs following those guidelines would provide for, citizen participation in state NPDES enforcement.

The argument of the EPA, focusing on the generality of sections 304(i) and 402(b), 33 U.S.C. §§ 1314(i), 1342(b), ignores another provision of the Act. In the "Congressional declaration of goals and policy," at the beginning of the legislation, Congress stated:

(e) Public participation in the development, revision, *and enforcement* of any regulation, plan, or program *established by* the Administrator or *any State* under this chapter shall be provided for, encouraged, and assisted by the Administrator and the States. *The Administrator, in cooperation with the States, shall develop and publish regulations specifying minimum guidelines for public participation in such processes.*

§ 101(e), 33 U.S.C. § 1251(e) (emphasis added). This section is an express Congressional directive that the Administrator of the EPA devise guidelines for and actively encourage public participation in the enforcement process of state NPDES programs. Citation to the generality of other statutory provisions outlining the Administrator's responsibility to establish guidelines for states and to assess state programs does not dispel this express mandate; instead, these general provisions are informed by the specific duty imposed by section 101(e). 33 U.S.C. § 1251(e).

█ This conclusion is corroborated by the legislative history underlying the Water Pollution Control Act Amendments of 1972. The report of the House Public Works Committee explained:

[T]he Committee has included provision for public participation in the development, revision and enforcement of any regulation, standard, or effluent limitation established by the Administrator or any State under this Act. Not only is this specifically required in Section 101(a) but the Administration is directed to encourage this participation.

H.R.Rep. No. 911; 92d Cong., 2d Sess., 132 (1972), reprinted in I *A Legislative History of the Water Pollution Control Act Amendments of 1972*, 93d Cong., 1st Sess., 819 (1973) (*"Legislative History"*). Representative Dingell, a sponsor of the Reuss-Din-

(D) funding, personnel qualifications, and manpower requirements (including a requirement that no board or body which approves permit applications or portions thereof shall include, as a member, any person who receives, or has during the previous two years received, a significant portion of his income directly or indirectly from permit holders or applicants for a permit).

Section 402(b), 33 U.S.C. § 1342(b), sets out the relevant statutory prerequisites for EPA approval of a state program:

State permit programs
* * * * * *

(b) At any time after the promulgation of the guidelines required by subsection (h)(2) of section 1314 of this title, the Governor of each State desiring to administer its own permit program for discharges into navigable waters within its jurisdiction may submit to the Administrator a full and complete de-

scription of the program it proposes to establish and administer under State law or under an interstate compact. In addition, such State shall submit a statement from the attorney general (or the attorney for those State water pollution control agencies which have independent legal counsel), or from the chief legal officer in the case of an interstate agency, that the laws of such State, or the interstate compact, as the case may be, provide adequate authority to carry out the described program. The Administrator shall approve each such submitted program unless he determines that adequate authority does not exist:

* * * * * *

(7) To abate violations of the permit or the permit program, including civil and criminal penalties and other ways and means of enforcement.

gell amendments which were adopted in substance in the Act, emphasized

. . . the importance of section 101(e) of this bill which encourages public participation in the development, revision and enforcement of various actions taken under this statute. I sincerely hope that the Administrator understands that this applies across the board, including the establishment of the permit program under section 402 of the bill.

I *Legislative History* at 108. See also S.Rep. No. 414, 92d Cong., 1st Sess., 12 (1971), reprinted in II *Legislative History* at 1430 U.S.Code Cong. & Admin.News 1972, p. 3668. These uncontradicted statements confirm the plain meaning of section 101(e): the Administrator of the EPA has a duty to establish state program guidelines and evaluate state programs to insure that there is public participation in the enforcement of these programs. *See* Conf.Rep. No. 1236, 92d Cong.2d Sess., 100 (1972), reprinted in I *Legislative History* at 283, U.S.Code Cong. & Admin.News 1972, p. 3668.

■ Given this mandate, the EPA's contention that the decision whether to establish guidelines regarding public participation in state NPDES programs is a matter entirely within the Administrator's unfettered discretion is unfounded.[6] We are not faced here with a situation in which an administrator, acting within the scope of his statutory authority and after considering all of the relevant factors, has made a discretionary judgment. *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 414–17, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

In the instant case, the Administrator of the EPA, by failing to establish guidelines regarding public participation in state NPDES enforcement has ignored a statutory directive.[7] And, as the Supreme Court has noted repeatedly, "In order for an agency interpretation to be granted deference, it must be consistent with the congressional purpose. *Espinoza v. Farah Mfg. Co.,* 414 U.S. 86 [94 S.Ct. 334, 38 L.Ed.2d 287] (1973); *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, [89 S.Ct. 1794, 23 L.Ed.2d 371] (1969)." *Morton v. Ruiz,* 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974). For these reasons, we hold that the EPA Administrator's approval of the Illinois program, without his prior promulgation of guidelines regarding citizen participation in the state enforcement process, violates the terms of the Clean Water Act and must be overturned. *See* 5 U.S.C. § 706.

■ The EPA argues that even if the participation guidelines are found inadequate, the Administrator's approval of the Illinois NPDES program should be upheld because the Illinois program provides for substantial citizen participation in the enforcement process. The Illinois program does permit Illinois citizens to file enforcement actions with the Illinois Pollution Control Board and to intervene, with certain conditional limitations, in state enforcement actions. Ill.Rev.Stat. ch. 111½, Title 8, § 1031(b); Illinois Pollution Control Board Procedural Rule 310. And these provisions may provide sufficient citizen participation in the Illinois enforcement process to satisfy

---

6. The EPA contends that the state program guidelines promulgated by the Administrator, 40 C.F.R. Part 124, represent a balancing of interests in which, apparently, the desire to allow states significant control over their own programs, *see* § 101(b), 33 U.S.C. § 1251(b), precluded guidelines requiring public participation in state programs. Respondents' Brief, p. 14. The EPA never explains the distinction between the constraint a *public participation* guideline would impose on state control over its program from that imposed by *any* guideline. Yet Congress clearly intended such guidelines to be an essential element of the national NPDES program. Further, given the fact that Congress' explicit directive regarding public

participation guidelines is in the same section of the Act as its encouragement of state responsibility, it is unlikely that it saw a conflict between the two objectives which could justify an Administrator's failure to promulgate such guidelines.

7. The only regulations promulgated by the Administrator requiring public participation in state NPDES programs concern participation in NPDES permit determinations. *See* 40 C.F.R. Part 124(D). The EPA guidelines concerning state enforcement procedures say nothing about public participation in the process. See 40 C.F.R. Part 124.73.

the federal statutory mandate.[8] We need not resolve this question, however. The statutory structure for the establishment, review, and approval of state NPDES programs requires that guidelines—including those concerning public participation in the state enforcement process—be established prior to the ratification of a state program.[9] § 402(b), 33 U.S.C. § 1342(b). The Administrator's failure to provide these guidelines, in violation of the Act's framework, compels reversal of his approval of the Illinois program irrespective of the terms of the program. 5 U.S.C. § 706. Congress did not intend reviewing courts to make ad hoc determinations about the adequacy of the citizen participation components of state programs without the benefit of regulations duly promulgated by the EPA. The only way to prevent such unguided judicial judgments is to require the EPA to follow the terms of the Clean Water Act by issuing public participation regulations prior to the ratification of a state NPDES program.

Accordingly, we hold that the Administrator's approval of the Illinois NPDES program is invalid and we direct the Administrator to withdraw his previously granted approval of the Illinois program and to take appropriate action in accordance with this opinion.

### On Petition for Rehearing.

SWYGERT, Circuit Judge.

In its brief to this court in *Citizens for a Better Environment v. EPA*, 596 F.2d 720 (7th Cir., 1979), the Environmental Protection Agency (EPA) stated:

> Pursuant to Section 402(b) of the Act, 33 U.S.C. § 1342(b), a state NPDES permit program, in order to be approved by the Administrator, must contain adequate authority to satisfy nine criteria enumerated in Section 402(b)(1)–(b)(9). Detailing, supplementing and explaining these requirements are procedural, monitoring and enforcement guidelines established by EPA pursuant to Section 304(i)(2) of the Act. *Those guidelines, 40 C.F.R. Part 124,* and the elements of Section 402(b) *are the only* statutory and *regulatory requirements for state NPDES programs.* Unless the Administrator determines that a state's proposed program does not satisfy these requirements, he must approve the program. *Save the Bay, Inc. v. Administrator,* 556 F.2d 1282, 1285 (5th Cir. 1977). (Emphasis added.)

Brief for Respondent, at p. 10. Now, in its motion for rehearing, EPA belatedly proffers regulations issued pursuant to section 101(e) of the Clean Water Act, 33 U.S.C. § 1251(e), 40 C.F.R. Part 105, which it contends satisfy EPA's statutory duty to promulgate regulations promoting public participation in state enforcement actions under the Act. Similarly, the State of Illinois appears for the first time in these proceedings, which are testing the validity of its own water pollution control program, and notes the existence of the regulations at 40 C.F.R. Part 105.[1]

---

**8.** Citizens contends that the federal citizen suit provision in the Act, section 505, 33 U.S.C. § 1365, defines the public participation in state enforcement required by section 101(e), 33 U.S.C. § 1251(e). This contention is based primarily on Citizens' argument that section 402(a)(3), 33 U.S.C. 1342(a)(3) requires that federal and state programs be as identical as possible. The language of this section, however, does not suggest that state programs are required to adopt the citizen participation components of the federal program; section 402(a)(3) requires only that the *federal* program "be subject to the same terms, conditions and requirements as apply to a state permit program." 33 U.S.C. § 1342(a)(3). Citizens, however, also points to more general language in the statute and its legislative history indicating that Congress intended state and federal

programs to be as uniform as possible. *See* § 103, 33 U.S.C. § 1253(a); S.Rep. No. 414, 92d Cong., 1st Sess., 54 (1971), reprinted in II *Legislative History* at 1472. We do not decide today what provisions must be made for citizen participation in the state NPDES enforcement process in order to satisfy the requirements of the Act.

**9.** In fact, section 402(b) contemplates the establishment of guidelines prior to the submission of a state program to the Administrator of the EPA for review.

**1.** The State of Illinois represents that neither it nor its Environmental Protection Agency was given notice of the pendency of the original proceeding.

The regulations now offered by EPA and the State pay lip-service, at best, to the Congressional directive that EPA guidelines encourage public participation in state enforcement actions.[2] (This mandate is discussed at length in our opinion in *Citizens for a Better Environment, supra.*) Despite its verbiage, section (f), in effect, requires only that a state agency answer its telephone and listen and look into the complaints of a private citizen. There is no provision for the participation of a private citizen in the enforcement process itself. This provision is no more than a legalistic articulation of a common courtesy and hardly can be cited as satisfaction of the EPA's statutory duty to issue regulations promoting public participation in state enforcement. Similarly, section (g) states only that a state agency cannot conceal from the public information requested by a private citizen when that information is already of public record because it is part of a legal proceeding. This regulation merely states the obvious; there is no explanation how it will "encourage" public participation in the enforcement process. Interestingly, the requirement in section (g) that the EPA comply with already existing Justice Department regulations regarding public comment prior to the approval of consent decrees is expressly applicable only to the EPA and not to state agencies. And the remaining provisions of 40 C.F.R. Part 105 do nothing to mandate citizen participation in the state enforcement process. Thus, the regulations promulgated under section 101(e) of the Act, 33 U.S.C. § 1251(e), do not alter the conclusion reached in *Citizens for a Better Environment, supra,* and the motion for rehearing is denied.[3]

2. EPA also argues that the guidelines found in 40 C.F.R. Part 124 satisfy this statutory requirement. That argument was analyzed and dismissed in our opinion in *Citizens for a Better Environment, supra,* at 724, nn. 6–7.

The most relevant regulations at 40 C.F.R. Part 105 read:

(f) *Enforcement.* Each [state] agency shall develop internal procedures for receiving and ensuring proper consideration of information and evidence submitted by citizens. Public effort in reporting violations of water pollution control laws shall be encouraged, and the procedures for such reporting shall be set forth by the agency. Alleged violations shall be promptly investigated by the Agency.

(g) *Legal Proceedings.* Each agency shall provide full and open information on legal proceedings under the Act, to the extent not inconsistent with court requirements, and where such disclosure would not prejudice the conduct of the litigation. Actions of the Environmental Protection Agency shall support and be consistent with this Statement of Policy issued by the Department of Justice with regard to affording opportunities for public comment before the Department of Justice consents to a proposed judgment in an action to enjoin discharges of pollutants into the environment. (See Title 28, Code of Federal Regulations, Chapter 1, § 50.7).
40 C.F.R. Part 105.4.

3. We are aware that EPA repeatedly has commented on the disruptive effect this ruling will have on water pollution enforcement in Illinois and, perhaps, throughout the nation. Yet EPA has never offered any evidence or arguments detailing this disruption nor has it moved for an order staying enforcement of our ruling until it could comply expeditiously with its statutory rulemaking responsibilities.