*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name: 05b0007n.06**

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | |
|---|---|
| In re: GIRTON, OAKES & BURGER, INC., | ) |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| PNH, INC., | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) No. 04-8052 |
| | ) |
| WILLIAM SAYAVICH, | ) |
| | ) |
| Defendant-Appellee. | ) |
| _____ | ) |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division.
No. 03-41957.

Argued: May 4, 2005

Decided and Filed: June 22, 2005

Before: AUG, PARSONS, and SCOTT, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** David S. Nichol, Akron, Ohio, for Appellant. Scott C. Essad, HENDERSON, COVINGTON, MESSENGER, NEWMAN & THOMAS, Youngstown, Ohio, for Appellee. **ON BRIEF:** David S. Nichol, Akron, Ohio, for Appellant. Scott C. Essad, HENDERSON, COVINGTON, MESSENGER, NEWMAN & THOMAS, Youngstown, Ohio, for Appellee.

---

**OPINION**

---

MARCIA PHILLIPS PARSONS, Bankruptcy Appellate Panel Judge. PNH, Inc. appeals a bankruptcy court order approving a proposed settlement between the chapter 7 trustee and the Appellee, a former employee of the debtor. Under the terms of the settlement, the trustee agreed to release the former employee from his covenant not to compete and other restrictive covenants imposed by his employment agreement with the debtor. PNH objected to the settlement on the ground that the restrictive covenants were no longer property of the bankruptcy estate, having previously been conveyed by the trustee to PNH in an earlier settlement. For the reasons that follow, the decision of the bankruptcy court is **REVERSED**.

## I.   ISSUE ON APPEAL

The issue in this case is whether the bankruptcy court erred in determining that the trustee's settlement with PNH did not include the restrictive covenants from the Appellee's employment agreement with the debtor.

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP, and a final order of the bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). For purposes of an appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989). The bankruptcy court's order granting the trustee's motion for approval of a settlement with the Appellee is a final order.

Contract interpretation is reviewed *de novo*. *See In re Brunswick Apartments of Trumbull County, Ltd.*, 215 B.R. 520, 522 (B.A.P. 6th Cir. 1998) (citing *United States v. Century Offshore*

*Mgmt. Corp. (In re Century Offshore Mgmt. Corp.),* 111 F.3d 443 (6th Cir. 1997)); *see also Sault Ste. Marie Tribe of Chippewa Indians v. Engler,* 146 F.3d 367, 373 (6th Cir. 1998) ("The determination of whether a contract is ambiguous, thereby making extrinsic evidence admissible for interpretive purposes, is a question of law and therefore subject to de novo review.") (quoting *Wulf v. Quantum Chem. Corp.,* 26 F.3d 1368, 1376 (6th Cir. 1994)). Under a *de novo* standard of review, the appellate court must make a fresh determination of questions of law without deference to the trial court. *See Razavi v. Comm'r*, 74 F.3d 125, 127 (6th Cir. 1996).

The Appellee maintains that the correct standard of review is abuse of discretion because the appeal is from the bankruptcy court's approval of a settlement agreement, citing *In re Albert-Harris, Inc.*, 313 F.2d 447, 449 (6th Cir. 1963) and *In re Bell & Beckwith*, 87 B.R. 476, 478 (N.D. Ohio 1988). While the Appellee is correct that approval of a settlement agreement is generally reviewed for abuse of discretion, the more specific issue before this Panel is the bankruptcy court's interpretation of a contract provision, which is reviewed *de novo*. If, as a result of the *de novo* review, the Panel finds that the bankruptcy court "applie[d] the incorrect legal standard, misapplie[d] the correct legal standard, or relie[d] upon clearly erroneous findings of fact," then the bankruptcy court will have abused its discretion in approving the settlement agreement. *Schenck v. City of Hudson*, 114 F.3d 590, 593 (6th Cir. 1997).


### III.  FACTS

An involuntary petition was filed against the debtor Girton, Oakes & Burger, Inc. on April 23, 2003, and on May 2, 2003, the bankruptcy court appointed Mark A. Beatrice as trustee ("Trustee"). On June 16, 2003, the bankruptcy court entered an order granting relief on the involuntary petition and converting the case to chapter 7.

On January 2, 2001, more than two years prior to the filing of the involuntary petition against the debtor, the Appellee William Sayavich entered into an employment agreement with the debtor ("Sayavich Employment Agreement"), which agreement contained various non-competition, non-disclosure, and non-solicitation covenants ("Employment Covenants"). On March 4, 2003, the debtor discharged Sayavich from his employment. Less than a month later, Sayavich filed suit against the debtor and the debtor's president, Ronald Creatore, in an Ohio state court, seeking

declaratory and injunctive relief for tortious interference with contract, defamation, unfair competition, and civil conspiracy.

On December 8, 2003, the Trustee filed in the bankruptcy case a motion seeking approval of a proposed settlement with Sayavich, whereby Sayavich would dismiss his state court action against the debtor in exchange for the Trustee releasing Sayavich from his Employment Covenants ("Sayavich Settlement"). PNH objected to the Sayavich Settlement. PNH asserted that the Trustee could not release Sayavich from his Employment Covenants because the Trustee had already conveyed the debtor's interest in the Employment Covenants, along with certain other assets of the debtor, to PNH in an earlier settlement approved by the bankruptcy court on July 25, 2003 ("PNH Settlement").

The PNH Settlement resolved an adversary proceeding the Trustee had filed against PNH, an entity wholly owned by Creatore and the holder of the debtor's loan obligations in excess of $1 million that were secured by a blanket lien on substantially all of the debtor's assets. In the adversary proceeding, the Trustee had sought the avoidance and recovery of preferential and fraudulent transfers, equitable subordination of PNH's security interest, and damages based on the alleged diversion of corporate assets. Under the terms of the PNH Settlement, the Trustee dismissed the adversary proceeding in return for PNH's purchase of the debtor's inventory at debtor's cost, PNH's payment of $50,000 to the Trustee, and PNH's credit bid of $20,000 for certain other specified property of the debtor, including "all of the intangible property of the Debtor . . . ."

On February 26, 2004, the bankruptcy court held a hearing on the motion to approve the Sayavich Settlement and PNH's objection to the motion. No evidence was introduced at the hearing; instead, the court heard from the Trustee and counsel for the parties. As to the question of whether he had previously assigned the Employment Covenants to PNH, the Trustee stated:

> I must confess, Your Honor, at the time of the agreement and compromise with PNH, I did not discuss or was not focused upon whether that included covenants not [to] complete. [sic] Basically, intangibles were made a part of that deal. Discussion of what intangibles included or did not include I don't think took place. I have no recollection of discussing any specific item, including whether it included the covenants not to compete of former employees.

(J.A. at 91.) At the direction of the bankruptcy court, PNH and Sayavich filed post-hearing memoranda of law on the issue. On June 3, 2004, the bankruptcy court entered an order overruling

PNH's objection and approving the Sayavich Settlement. As set forth in the memorandum opinion accompanying the order, the bankruptcy court concluded both from the language of the PNH Settlement and the statements of the Trustee that the transfer to PNH of the debtor's intangible property did not include the Employment Covenants, and that, therefore, there was no prohibition on the Trustee releasing the Employment Covenants in the Sayavich Settlement.

## IV.  DISCUSSION

According to the bankruptcy court's memorandum opinion, Paragraph C of the agreement evidencing the PNH Settlement ("PNH Settlement Agreement") provides as follows:

> **The Trustee agrees** to release and return to PNH, Inc. and PNH, Inc. agrees to accept and credit the Loan Balances in the amount of $20,000.00 for all of the Debtor's property located at the Boardman, Ohio place of business of Debtor, which personal property was the subject of the Motion of the Trustee to Sell Personal Property and **to further transfer, and assign to PNH, Inc., or its assigns, all of the intangible property of the Debtor, including customer lists, marketing supplies, trade names, trademarks, websites, telephone numbers.**

(J.A. at 79-80) (emphasis added). In reaching its decision in this case, the bankruptcy court concluded that the language in question, "all of the intangible property of the Debtor," was "not clear and unambiguous." (J.A. at 81.) It noted that there was no provision in the PNH Settlement Agreement that "explicitly deals with the Sayavich Covenants in particular or non-compete agreements in general" (J.A. at 81) and that the emphasized language quoted above "does not expressly provide that the illustrative terms are nonexclusive." (J.A. at 83.) The court also observed that the PNH Settlement Agreement does not define "all intangible property" and determined, after reviewing Black's Law Dictionary's definition of intangible property, that "it is not clear that the Sayavich Covenants can be properly categorized as 'intangible property.'" (J.A. at 81.) Employing the construction device of *ejusdem generis*, the bankruptcy court reasoned that the Employment Covenants "do not resemble or are not similar to 'customer lists, marketing supplies, trade names, trademarks, websites, [or] telephone numbers.'" (J.A. at 83.) Lastly, in light of its conclusion that the agreement was "vague and susceptible of more than one meaning" (J.A. at 83), the bankruptcy court considered the parties' intent, particularly the Trustee's statement that he did not contemplate

assigning such obligations when he entered into the PNH Settlement.[1]  Accordingly, "[b]ased on the language of the PNH [Settlement] Agreement and the Trustee's representations concerning his true intentions, the Court [held] that the term 'intangible property' [did] not reference or include the Sayavich Covenants."  (J.A. at 84.)

In this appeal, PNH argues that the bankruptcy court erred in its interpretation of the PNH Settlement Agreement.  According to PNH, the term "intangible property" plainly includes the Employment Covenants, and because the PNH Settlement Agreement is unambiguous, consideration of extrinsic evidence of the Trustee's intent was erroneous.  Alternatively, PNH asserts that if consideration of extrinsic evidence was proper, the bankruptcy court erred in failing to consider extrinsic evidence of PNH's intent.  On the other hand, Sayavich, contrary to the bankruptcy court's ruling, agrees with PNH that the PNH Settlement Agreement is unambiguous, but asserts that the PNH Settlement Agreement does not include the Employment Covenants because there is no specific reference to them, with the term "intangible property" limited to the specifically identified items.  Sayavich also argues that the Trustee's statements relied upon by the bankruptcy court were not extrinsic evidence because they indicated the Trustee's intent in executing the PNH Settlement Agreement.

As recognized by the bankruptcy court, the PNH Settlement Agreement by its terms is governed by Ohio law.  The fundamental principles of Ohio law on contract construction are as follows:

> "The purpose of contract construction is to effectuate the intent of the parties," and that intent "is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St. 3d 130, 132, 31 OBR 289, 509 N.E.2d 411.  Courts resort to extrinsic evidence of the parties' intent "only

---

[1]The bankruptcy court also considered a June 2, 2003 letter from the Trustee in which he states that he had "no intention of pursuing or attempting to enforce any of the Non-Compete Agreements Mr. Sayavich had in place at the time of this bankruptcy" and that he would release Sayavich from these non-compete requirements in return for Sayavich releasing any claims that he may have against the debtor.  This letter was not addressed at the hearing.  In this appeal, the parties dispute the significance of the letter. While Sayavich maintains that the letter is evidence of the Trustee's intention when he subsequently entered into the PNH Settlement, PNH asserts that it was a mere proposal by the Trustee that later was rejected by Sayavich.  As discussed below, in light of the Panel's determination that consideration of extrinsic evidence was improper, it is not necessary for this Panel to evaluate the evidence of intent submitted by either of the parties.

> where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning." *Id.* The fact that the parties fail to specifically define a term within the contract does not make the term ambiguous. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St. 3d 107, 108, 652 N.E.2d 684. Instead, common, undefined words appearing in a written instrument "will be given their ordinary meaning unless manifest absurdity results, or some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St. 2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus.

*State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 820 N.E.2d 910, 915-916 (Ohio 2004). As this language indicates, the fact that the PNH Settlement Agreement does not define "intangible property" is not determinative. Rather, the phrase must be given its ordinary meaning unless "manifest absurdity results, or some other meaning is clearly evidenced from the face or overall contents of the instrument." *Id*. at 915.

An examination of Ohio case law and secondary sources reveals that the ordinary meaning of "intangible property" clearly encompasses the Employment Covenants. The Sayavich Employment Agreement and the Employment Covenants contained therein are without question contract rights. Under Ohio common law, the right to enforce a contract is a chose in action and, therefore, intangible property. *See Loveman v. Hamilton,* 420 N.E.2d 1007, 1009 (Ohio 1981) (referring to "a contract right and the right to bring a cause of action in a court of law" as examples of "[i]ntangible choses in action"); *Anderson v. Durr*, 126 N.E. 57, 60 (Ohio 1919) (recognizing that mutual covenants and agreements between parties are enforceable contract rights and, thus, choses in action; referring to choses in action as intangible property), *aff'd sub nom. Citizens' Nat. Bank of Cincinnati v. Durr*, 257 U.S. 99, 42 S. Ct. 15 (1921); *Carcorp, Inc. v. Chesrown Oldsmobile—GMC Truck, Inc.*, 823 N.E.2d 34, 41 (Ohio Ct. App. 2004) (referring to "contract rights" as "intangibles"); *Toledo Blank, Inc. v. Pioneer Steel Serv. Co.*, 648 N.E.2d 1, 4 (Ohio Ct. App.1994) (determining that "an account receivable is a contract right and, therefore, is a chose in action and intangible property."); *Ohio Farmers' Ins. Co. v. Hard*, 10 Ohio Dec. 469, 1900 WL 2326, at *11 (Ohio Com. Pl. 1900) (recognizing, in the context of a tax case, that choses in action are a species of intangible property).

Furthermore, the Ohio courts' recognition of contract rights as intangible property is consistent with the views of other respected sources. *Black's Law Dictionary* defines "intangible

property" as "[p]roperty that lacks a physical existence." *Black's Law Dictionary* (8th ed. 2004) (found within the definition of "property")*. American Jurisprudence* states that "[i]ntangibles consist of rights not related to physical things, but that are merely relationships between persons, natural or corporate, which the law recognizes by attaching to them certain sanctions enforceable in the courts." 63C *Am. Jur. 2d Property* § 9 (2004). *Corpus Juris Secundum* similarly provides that "[i]ntangible property is property that has no intrinsic and marketable value, but is merely representative or evidence of value, such as certificates of stock, bonds, promissory notes, and franchises." 73 *C.J.S. Property* § 37 (2004).

Plainly, the Employment Covenants fall within every definition of the term "intangible property." They lack physical existence; they address the legally-recognized relationship between the debtor and Sayavich, enforceable in the courts; and they have no intrinsic value, but are merely representative of value. As such, the ordinary meaning of the term "intangible property" should apply absent a "manifest absurdity" or unless an alternative meaning of intangible property is "clearly evidenced from the face or overall contents" of the PNH Settlement Agreement. *See State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 820 N.E.2d at 915. There is no indication that an absurdity would result if intangible property were construed to include the Employment Covenants. In fact, Sayavich neither makes this argument nor was it a basis of the bankruptcy court's ruling.

With respect to whether another meaning is clearly evidenced in the face of the document, the bankruptcy court limited the meaning of the term "intangible property" to items similar to those specifically listed, i.e., "customer lists, marketing supplies, trade names, trademarks, websites, telephone numbers," utilizing the construction device of *ejusdem generis*. However, Ohio courts typically apply *ejusdem generis* when "there is a listing of specific terms followed by a catchall word or phrase which is linked to the specific terms by the word 'other' . . . ." *Moulton Gas Serv., Inc. v. Zaino*, 776 N.E.2d 72, 75 (Ohio 2002); *see also In re Dow Corning Corp.*, 142 F.3d 433, 1998 WL 180596, at **3 (6th Cir. 1998) (table decision) (applying *ejusdem generis* to the phrase "other services").[2] The PNH Settlement Agreement in the present case did not have a list of specific

---

[2]For example, the issue before the court in *Moulton Gas Serv*ice was whether bobtail tanks used in the transportation of liquid propane fell within a tax exemption for "packages," which were defined as "bags, baskets, cartons, crates, boxes, cans, bottles, bindings, wrappings, and other similar devices and containers." *Moulton Gas Serv., Inc. v. Zaino*, 776 N.E.2d at 74. For other cases where

(continued...)

terms followed by the word "other" and then a general term. Rather, the enumeration followed the phrase "all intangible property," a specific term with a definite meaning.[3] *Cf. Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 325 (6th Cir. 1997) (affirming and noting district court's rejection of *ejusdem generis* argument because "trustee" and "receiver" are specific and not general terms). To limit the phrase "all intangible property" to those specific items listed or similar items would render the word "all" meaningless. *See United States v. Thomas*, 74 F.3d 701, 708 (6th Cir. 1996) ("[T]he rule of *ejusdem generis* should not be 'employed to render general words meaningless' . . . .") (quoting *United States v. Alpers*, 338 U.S. 680, 682, 70 S. Ct. 352, 354 (1950)); *see also Donovan v. Anheuser-Busch, Inc.*, 666 F.2d 315, 327 (8th Cir. 1981) (*ejusdem generis* may not be applied where general words would be rendered meaningless). Simply put, "all" means "all." *See Weiner v. Am. Cancer Soc'y*, No. 80308, 2002 WL 1265575, at *7 (Ohio Ct. App. June 6, 2002) (concluding that a claim for negligence is within an indemnification clause covering "any and all" claims; "all means all" even though negligence is not listed within the exculpatory clause.); *Wells v. Am. Elec. Power Co.*, 548 N.E.2d 995, 998 (Ohio Ct. App. 1988) ("If the grantee of the mineral estate is liable for all damages, and if the grantor waives all damages, it cannot be contended that the language of the contract is unclear. 'All' means all."); *but see Graham v. Drydock Coal Co.,* 667 N.E.2d 949, 954 (Ohio 1996) (finding "all means all" argument unpersuasive; construing deed conveying ownership of all coal and right to remove it to include right of removal by strip mining is unreasonable where surface rights are retained).

Additionally, the definition of "including" found in *Black's Law Dictionary* supports a non-exclusive reading of the disputed phrase: "*including* typically indicates a partial list . . . . But some drafters use phrases such as *including without limitation* and *including but not limited to* – which

---

[2](...continued)
*ejusdem generis* was employed, see *Woods v. Simpson*, 46 F.3d 21, 23 (6th Cir. 1995) (applying *ejusdem generis* to the phrase "other income"); *Canton Police Benevolent Ass'n of Canton*, *Ohio v. United States*, 844 F.2d 1231, 1236 (6th Cir. 1988) (applying *ejusdem generis* to the phrase "other benefits"); *Harris v. Richards Mfg. Co.*, 675 F.2d 811, 815 (6th Cir. 1982) (applying *ejusdem generis* to the phrase "such other and further relief"); *George H. Dingledy Lumber Co. v. Erie R.R. Co.*, 131 N.E. 723, 726 (Ohio 1921) (applying *ejusdem generis* to the phrase "or otherwise"); *Gibson v. Donahue,* 772 N.E.2d 646, 650-51 (Ohio Ct. App. 2002) (applying *ejusdem generis* to the phrase "other person").

[3]If the phrase had read, "the Trustee further conveys customer lists, marketing supplies . . . and other similar property," then application of *ejusdem generis* would have been appropriate.

mean the same thing." *Black's Law Dictionary* 766 (7th ed. 1999). Because "including" "means the same thing" as "including without limitation," the sentence does in fact provide that the list is nonexclusive. The bottom line is that the ordinary, everyday meaning of the phrase "all intangible property" includes the Employment Covenants. This construction is not manifestly absurd, nor is there another meaning of the phrase "clearly evidenced from the face . . . of the instrument." *State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 820 N.E.2d at 915. Accordingly, it was error for the bankruptcy court to hold otherwise.

The scant authority offered by Sayavich in defense of the bankruptcy court's ruling is not pertinent. Sayavich cites the sixth edition of Black's Law Dictionary for the proposition that a "contract right" is distinct from a "general intangible." *See Black's Law Dictionary* (6th ed. 1990) ("general intangible" is defined as "any personal property (including things in action) other than goods, accounts, contract rights, chattel paper, documents, instruments, and money"). But the current edition of Black's Law Dictionary does not exclude "contract right" from the definition of "general intangible." *See Black's Law Dictionary* (8th ed. 2004).[4]

Sayavich also argues that "[e]ven a cursory review of the law set forth by the Sixth Circuit, and all the courts under its jurisdiction, shows that a contract right is considered a creature apart from a general intangible." (Appellee Br. at 12.) Nonetheless, the sole authority cited for this proposition is a bankruptcy court decision from the Eastern District of Tennessee, *First State Bank v. Morristown Lincoln-Mercury, Inc. (In re Morristown Lincoln-Mercury, Inc.)*, 27 B.R. 801 (Bankr. E.D. Tenn. 1983). That case involved the application of Tennessee's 1979 version of Article 9 of the Uniform Commercial Code ("U.C.C.") which excluded "contract rights" from its definition of general intangibles. *Id.* at 807. To the extent that it is relevant since the U.C.C. is not applicable to this matter, the Ohio version of the U.C.C. in effect both at the time of the PNH Settlement and today does not exclude "contract right" from the definition of "general intangible."[5] *See Ohio Rev.*

_____

[4]Although the seventh edition of *Black's Law Dictionary* was in effect at the time of the PNH Settlement, the seventh, like the eighth edition, does not exclude a contract right from the definition of a general intangible.

[5]In this regard, it should be emphasized that the PNH Settlement Agreement encompasses "all intangible property" and not the more narrow term "general intangible." Thus, even assuming for purposes of argument that "contract rights" are distinct from "general intangibles," that is not

(continued...)

*Code Ann.* § 1309.102(A)(42).[6]

Because the PNH Settlement Agreement was clear and unambiguous, it was error for the bankruptcy court to consider extrinsic evidence of the parties' intent. *See State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 820 N.E.2d at 915. The language of the instrument is controlling. *See Kelly v. Med. Life Ins. Co.*, 509 N.E.2d 411, 413 (Ohio 1987) ("The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement."). As Sayavich himself points out in his brief on appeal, "[w]hether or not an event was contemplated by the contracting parties is determined first and foremost by examining the words of the contract." (Appellee Br. at 8) (quoting *Daniel E. Terreri & Sons, Inc. v. Mahoning County Bd. of Comm'rs*, 786 N.E.2d 921, 927 (Ohio Ct. App. 2003)).

Notwithstanding his recognition of this legal principle, counsel for Sayavich asserted at oral argument before this Panel that the Trustee's statements relied upon by the bankruptcy court were not extrinsic evidence, even though they were extraneous to the PNH Settlement Agreement, because they were evidence of the Trustee's intent not to include the Employment Covenants in the PNH Settlement. This assertion is absolutely meritless since regardless of its purpose, the evidence was clearly extrinsic, i.e., outside the four corners of the document, and thus, may only be considered after a finding of ambiguity in the document's language. *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 716 N.E.2d 1201, 1208 (Ohio Ct. App. 1998) (citing *Blosser v. Carter*, 586 N.E.2d 253, 255-56 (Ohio Ct. App. 1990)). The extrinsic evidence cannot create the ambiguity; rather "the ambiguity must be patent." *Schachner v. Blue Cross & Blue Shield of Ohio*, 77 F.3d 889, 893 (6th Cir. 1996). The case relied upon by Sayavich as authority for allowing consideration of the intent evidence, *Blakeman's Valley Office Equip., Inc. v. Bierdeman*, 786 N.E.2d 914 (Ohio Ct. App. 2003), is inapposite because it deals with a determination of whether the parties to an employment agreement intended a non-compete agreement to be assignable. There is no question

---

[5](...continued)
dispositive of the issue at bar, whether a contract right, such as the Employment Covenants, is included in the broader category of intangible property.

[6]"'General intangible' means any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction. 'General intangible' includes payment intangibles and software." *Ohio Rev. Code Ann.* § 1309.102(A)(42).

in the present case that the Employment Covenants are assignable, as assignability is explicit in the Sayavich Employment Agreement. Furthermore, and contrary to Sayavich's arguments herein, the *Bierdeman* court did not consider extrinsic evidence to determine the intent of the parties, but instead based its decision solely on the language of the agreement. *Bierdeman*, 786 N.E.2d at 918.

## V.   CONCLUSION

The bankruptcy court erred in determining that the PNH Settlement Agreement did not include Sayavich's Employment Covenants. The PNH Settlement Agreement clearly and unambiguously provides for the transfer of "all intangible property," which given its ordinary meaning encompasses the Employment Covenants. Because this construction does not result in an absurdity and no other meaning is clearly evidenced from the face of the PNH Settlement Agreement, the plain meaning is controlling, and it was inappropriate for the bankruptcy court to consider extrinsic evidence. The bankruptcy court's approval of the Sayavich Settlement was an abuse of discretion, and accordingly, the decision of the bankruptcy court and its order approving the Sayavich Settlement is **REVERSED**.