## UNITED STATES *v.* ALPERS.

No. 217.   Argued December 14, 1949.—Decided February 6, 1950.

*Joseph W. Bishop, Jr.* argued the cause for the United States.   With him on the brief were *Solicitor General Perlman, Assistant Attorney General Campbell, Robert S. Erdahl* and *Israel Convisser.*

*A. J. Zirpoli* submitted on brief for the respondent.

MR. JUSTICE MINTON delivered the opinion of the Court.

The question in this case is whether the shipment of obscene phonograph records in interstate commerce is prohibited by § 245 of the Criminal Code, which makes illegal the interstate shipment of any "obscene . . . book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character."

Respondent was charged by an information in three counts with knowingly depositing with an express company for carriage in interstate commerce packages "containing certain matter of an indecent character, to-wit: phonograph records impressed with recordings of obscene, lewd, lascivious and filthy language and obscene, lewd, lascivious and filthy stories." Respondent, having waived jury trial, was found guilty by the District Court on two counts and was assessed a fine on each. The Court of Appeals reversed. 175 F. 2d 137. We granted certiorari to examine the applicability of § 245 of the Criminal Code to the facts of this case. 338 U. S. 813.

The pertinent provisions of the statute are as follows:

> "Whoever shall . . . knowingly deposit or cause to be deposited with any express company or other common carrier [for carriage in interstate commerce] any obscene, lewd, or lascivious, or any filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character . . . shall be fined not more than $5,000 or imprisoned not more than five years, or both." 41 Stat. 1060, 18 U. S. C. § 396, now 18 U. S. C. § 1462.

It is conceded that the phonograph records were obscene and indecent. The only question is whether they come within the prohibition of the statute.

We are aware that this is a criminal statute and must be strictly construed. This means that no offense may be created except by the words of Congress used in their usual and ordinary sense. There are no constructive offenses. *United States* v. *Resnick,* 299 U. S. 207, 210. The most important thing to be determined is the intent of Congress. The language of the statute may not be distorted under the guise of construction, or so limited by construction as to defeat the manifest intent

of Congress. *United States* v. *Raynor,* 302 U. S. 540, 552.[1]

In interpreting the statute as applied to this case the Court of Appeals invoked the rule of *ejusdem generis.* Since the words "book, pamphlet, picture, motion-picture film, paper, letter, writing, print" appearing in the statute refer to objects comprehensible by sight only, the court construed the general words "other matter of indecent character" to be limited to matter of the same genus. The Court of Appeals held phonograph records without the statute, so interpreted, since phonograph records are comprehended by the sense of hearing.

When properly applied, the rule of *ejusdem generis* is a useful canon of construction. But it is to be resorted to not to obscure and defeat the intent and purpose of Congress, but to elucidate its words and effectuate its intent. It cannot be employed to render general words meaningless. *Mason* v. *United States,* 260 U. S. 545, 554. What is or is not a proper case for application of the rule was discussed in *Gooch* v. *United States,* 297 U. S. 124. In that case a bandit and a companion had kidnaped two police officers for the purpose of avoiding arrest and had transported them across a state line. The defendant was convicted of kidnaping under a federal statute which made it an offense to transport across state lines any person who had been kidnaped "and held for ransom or reward or otherwise." The police officers had been held not for ransom or reward but for protection, and it was contended that the words "or otherwise" did not cover the defendant's conduct, since under the rule of *ejusdem generis,* the general phrase was limited in meaning to some kind of monetary reward. This Court rejected such limiting application of the rule, saying:

[1] See Horack, The Disintegration of Statutory Construction, 24 Ind. L. J. 335, 343–344 (1949).

"The rule of *ejusdem generis,* while firmly established, is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty. Ordinarily, it limits general terms which follow specific ones to matters similar to those specified; but it may not be used to defeat the obvious purpose of legislation. And, while penal statutes are narrowly construed, this does not require rejection of that sense of the words which best harmonizes with the context and the end in view." 297 U. S. at 128.

We think that to apply the rule of *ejusdem generis* to the present case would be "to defeat the obvious purpose of legislation." The obvious purpose of the legislation under consideration was to prevent the channels of interstate commerce from being used to disseminate any matter that, in its essential nature, communicates obscene, lewd, lascivious or filthy ideas. The statute is more fully set out in the margin.[2] It will be noted that Congress legislated with respect to a number of evils in addition to

---

[2] "Whoever shall bring or cause to be brought into the United States, or any place subject to the jurisdiction thereof, from any foreign country, or shall therein knowingly deposit or cause to be deposited with any express company or other common carrier [for carriage in interstate or foreign commerce] any obscene, lewd, or lascivious, or any filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character, or any drug, medicine, article, or thing designed, adapted, or intended for preventing conception, or producing abortion, or for any indecent or immoral use; or any written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind giving information, directly or indirectly, where, how, or of whom, or by what means any of the hereinbefore mentioned articles, matters, or things may be obtained or made; or whoever shall knowingly take or cause to be taken from such express company or other common carrier any matter or thing the depositing of which for carriage is herein made unlawful, shall be fined not more than $5,000 or imprisoned not more than five years, or both." 18 U. S. C. § 396, now 18 U. S. C. § 1462.

those proscribed by the portion of the statute under which respondent was charged. Statutes are construed in their entire context. This is a comprehensive statute, which should not be constricted by a mechanical rule of construction.

We find nothing in the statute or its history to indicate that Congress intended to limit the applicable portion of the statute to such indecent matter as is comprehended through the sense of sight. True, this statute was amended in 1920 to include "motion-picture film." We are not persuaded that Congress, by adding motion-picture film to the specific provisions of the statute, evidenced an intent that obscene matter not specifically added was without the prohibition of the statute; nor do we think that Congress intended that only visual obscene matter was within the prohibition of the statute. The First World War gave considerable impetus to the making and distribution of motion-picture films. And in 1920 the public was considerably alarmed at the indecency of many of the films.[3] It thus appears that with respect to this amendment, Congress was preoccupied with making doubly sure that motion-picture film was within the Act, and was concerned with nothing more or less.[4]

Upon this record we could not hold, nor do we wish to be understood to hold, that the applicable portion of the statute is all-inclusive. As we have pointed out, the same statute contains other provisions relating to objects intended for an indecent or immoral use. But the portion of the statute here in issue does proscribe the dissemination of matter which, in its essential nature, com-

---

[3] See The Motion Picture Industry, 254 Annals of the American Academy of Political and Social Science, pp. 7–9, 140, 155, 157 (1947).

[4] H. R. Rep. No. 580, 66th Cong., 2d Sess. (1920); S. Rep. No. 528, 66th Cong., 2d Sess. (1920); 59 Cong. Rec. 2178–2179, 7162, 7297, 8280, 8334 (1920).

municates obscene ideas. We are clear therefore that obscene phonograph records are within the meaning of the Act. The judgment of the Court of Appeals is reversed, and the judgment of the District Court is affirmed.

*Reversed.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

MR. JUSTICE BLACK, with whom MR. JUSTICE FRANKFURTER and MR. JUSTICE JACKSON concur, dissenting.

I am unable to agree that the conduct of this respondent was made an offense by the language of the statutory provision on which his conviction rests. That provision forbids deposit with an express company, for interstate carriage, of "any obscene, lewd, or lascivious, or any filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character . . . ." 18 U. S. C. § 396 (1946 ed.), now § 1462 (1948 rev.). The crime with which respondent was charged involved phonograph records, which do not come under any specific category listed in the statute. Consequently the information against respondent could only charge violation of the provision's general language barring shipment of "other matter of indecent character." The Court sustains the conviction here by reasoning that a phonograph record is "matter" within the meaning of this congressional prohibition.

Our system of justice is based on the principle that criminal statutes shall be couched in language sufficiently clear to apprise people of the precise conduct that is prohibited. Judicial interpretation deviates from this salutary principle when statutory language is expanded to include conduct that Congress might have barred, but

did not, by the language it used.[1]    Compare *United States* v. *Weitzel,* 246 U. S. 533, 543, with *United States* v. *Sullivan,* 332 U. S. 689, 693–694.

The reluctance of courts to expand the coverage of criminal statutes is particularly important where, as here, the statute results in censorship.   According to dictionary definitions, "matter" undeniably includes phonograph records and the substances of which they are made.   Indeed, dictionaries tell us that "matter" encompasses all tangibles and many intangibles, including material treated or to be treated in a book, speech, legal action or the like; matter for discussion, argument, exposition, etc.; and material treated in the medieval metrical romances.   The many meanings of "matter" are warning signals against giving the word the broad construction adopted by the Court.

History is not lacking in proof that statutes like this may readily be converted into instruments for dangerous abridgments of freedom of expression.   People of varied temperaments and beliefs have always differed among themselves concerning what is "indecent."   Sculpture, paintings and literature, ranked among the classics by some, deeply offend the religious and moral sensibilities of others.[2]   And those which offend, however priceless or

---

[1] The Government points to the legislative history of this and related statutes as proof that Congress intended its language to be most broadly construed.   Particularly it relies on the argument that Anthony Comstock, a supporter and promoter of the first federal statutes in this field, had a reputation for "thoroughness in his pursuit of immorality."   This may be conceded, but we cannot construe this statute on the theory that Mr. Comstock's zeal as a reformer of morals must be considered as determinative legislative history.   That zeal was undoubtedly great, so great that if accepted as a criterion of construction the Court could expand the punishment along with the coverage of the Act.

[2] See *Hannegan* v. *Esquire, Inc.,* 327 U. S. 146, 157–158; *Bleistein* v. *Donaldson Lithographing Co.,* 188 U. S. 239, 251–252.

irreplaceable, have often been destroyed by honest zealots convinced that such destruction was necessary to preserve morality as they saw it.

Of course there is a tremendous difference between cultural treasures and the phonograph records here involved. But our decision cannot be based on that difference. Involved in this case is the vital question of whether courts should give the most expansive construction to general terms in legislation providing for censorship of publications or pictures found to be "indecent," "obscene," etc. Censorship in any field may so readily encroach on constitutionally protected liberties that courts should not add to the list of items banned by Congress.[3]

In the provision relied on, as well as elsewhere in the Act, Congress used language carefully describing a number of "indecent" articles and forbade their shipment in interstate commerce. This specific list applied censorship only to articles that people could read or see; the Court now adds to it articles capable of use to produce sounds that people can hear.[4] The judicial addi-

---

[3] See discussion in 1 Chafee, Government and Mass Communications 200–366.

[4] In a second provision of the Act, Congress barred shipment of "any drug, medicine, article, or thing designed, adapted, or intended for preventing conception, or producing abortion, or for any indecent or immoral use . . . ." This provision, unlike the first provision relating to pictures and written or printed matter, requires proof that the object shipped was designed, adapted or intended for indecent or immoral use.

A New York statute contains two provisions closely resembling these two provisions in the federal statute. New York Penal Law, § 1141. The New York Court of Appeals refused to sustain a conviction for selling phonograph records based on an information charging violation of the first provision of the state act, which was substantially equivalent to the federal provision here involved except that the word "matter" was modified by the phrase "written or printed." The state court did not find it necessary to determine

tion here may itself be small. But it is accomplished by a technique of broad interpretation which too often may be successfully invoked by the many people who want the law to proscribe what other people may say, write, hear, see, or read. I cannot agree to any departure from the sound practice of narrowly construing statutes which by censorship restrict liberty of communication.

Since Congress did not specifically ban the shipment of phonograph records,[5] this Court should not do so.

---

whether a prosecution could have been based on the second provision, which covers "any article or instrument of indecent or immoral use." *New York* v. *Strassner,* 299 N. Y. 325, 87 N. E. 2d 280.

[5] Since the decision below, a bill has been introduced in the House of Representatives at the request of the Department of Justice to amend the statute so as to prohibit the transportation of obscene phonograph records in interstate commerce. H. R. 6622, 81st Cong., 2d Sess. In requesting this amendment, The Assistant to the Attorney General stated that whether or not the present statute applied to phonograph records was "questionable," particularly in the light of the decision below. Recalling the 1920 amendment to bring motion-picture film within the coverage of the statute, he urged that "Apparently, the time has now arrived for a further amendment to bring obscene phonograph records clearly within the scope of the present section." This proposed bill is still pending in the House Committee on the Judiciary.