# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 30, 2010

No. 09-30487

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JOHN P. NICHOLS,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:08-CR-188-1

Before DEMOSS, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

John P. Nichols pleaded guilty to one count of sexual exploitation of a child pursuant to 18 U.S.C. § 2251(a). For the first time on appeal, Nichols challenges the factual basis for his guilty plea. He argues that the Government failed to show that transmitting a live video of sexually-explicit conduct over the Internet produced a "visual depiction" within the meaning of the statute. We conclude that the district court did not plainly err in accepting Nichols's guilty plea and AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-30487

## I.  Background

The facts of this case are not in dispute.  While engaged in an Internet chat session with an anonymous couple, Nichols used a webcam to transmit over the Internet images of a minor child's genitals, as well as images of sexually-explicit contact with the minor.  As a result, Nichols was indicted for one count of sexual exploitation of a child under 18 U.S.C. § 2251(a), as well as one count of forfeiture under 18 U.S.C. § 2253.

Prior to trial, Nichols confessed and agreed to plead guilty to the sexual exploitation of a child charge.  At the change of plea hearing, the Government introduced the testimony of Agent Chris Cantrell to establish the factual basis for Nichols's guilty plea.[1]  Agent Cantrell testified that Nichols used a webcam to transmit images over the Internet of the victim's vaginal area and the image of the victim touching Nichols's penis.  The Government did not introduce any testimony or physical evidence that Nichols permanently recorded or otherwise preserved the content of the webcam transmissions.  The district court found that a sufficient factual basis for the guilty plea existed in the record and accepted Nichols's guilty plea.  The district court sentenced Nichols to 300 months of imprisonment and fifteen years of supervised release.

Nichols now appeals, asserting that there was an insufficient factual basis to show that he transmitted a "visual depiction" within the meaning of the statute.  The sole issue raised by Nichols is whether, at the time of his guilty plea, § 2251(a) proscribed the transmission of live streaming video depicting minors engaged in sexually-explicit conduct.  Nichols asserts that because the statute was amended in 2008 to specifically include the transmission of live video depictions, the 2006 version of the statute could not have reached such conduct.

---

[1] Agent Cantrell's testimony was based in part on his review of videotaped interviews with the victim and the defendant.

No. 09-30487

## II. Standard of Review

Before a district court may accept and enter judgment on a guilty plea, it must determine that the plea is supported by a factual basis. FED. R. CRIM. P. 11(b)(3). In doing so, the district court must "determine that the *factual* conduct to which the defendant admits is sufficient *as a matter of law* to constitute a violation of the statute." *United States v. Marek*, 238 F.3d 310, 314 (5th Cir. 2001) (en banc). We have held that "[t]he factual basis cannot be implied from the fact that the defendant entered a plea, but must appear on the face of the record and 'must be precise enough and sufficiently specific' to demonstrate that the accused committed the charged criminal offense." *United States v. Adams*, 961 F.2d 505, 508 (5th Cir. 1992) (quoting *United States v. Johnson*, 546 F.2d 1225, 1226 (5th Cir. 1977) (per curiam)).

Nichols did not challenge the factual basis for his guilty plea in the district court; accordingly, we review for plain error. *Marek*, 238 F.3d at 315 ("We have repeatedly held that when a defendant, for the first time on appeal, presents a straightforward issue of law—here, whether the undisputed factual basis is sufficient as a matter of law to sustain the guilty plea—we will review that issue for plain error."). Thus, Nichols must establish that: (1) an error was made; (2) the error was clear or obvious; and (3) the error affects his substantial rights. *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009). Even if Nichols demonstrates that all three elements are satisfied, we retain the discretion to remedy the error and will only do so if Nichols can "show that the error has a serious effect on the fairness, integrity, or public reputation of judicial proceedings." *United States v. Baker*, 538 F.3d 324, 332 (5th Cir. 2008) (quotation marks and citation omitted), *cert. denied*, 129 S. Ct. 962 (2009); *see also Puckett*, 129 S. Ct. at 1429; *United States v. London*, 568 F.3d 553, 559 (5th Cir. 2009), *petition for cert. filed* (U.S. Aug. 11, 2009) (No. 09-5844).

3

No. 09-30487

Thus, we first ask whether the district court erred in accepting Nichols's guilty plea.  We determine whether error was committed by comparing each element of the charged crime to the facts admitted by Nichols during the plea colloquy.  *Marek*, 238 F.3d at 315.

### III.  Discussion

At the time Nichols entered his guilty plea, § 2251(a) made any person "who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct" guilty of sexual exploitation of a child.  18 U.S.C. § 2251(a) (2006) (amended 2008).  Section 2256(5) defined "visual depiction" to "include[ ] undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image." 18 U.S.C. § 2256(5) (2006) (amended 2008).  From this language Nichols infers that § 2251(a), which incorporates the definition of visual depiction contained in § 2256(5), applied, at the time of his conviction, only to *permanently* stored data. We disagree.

The definition of "visual depiction" set forth in § 2256(5) is not an exhaustive list of the types of visual depictions criminalized by § 2251(a). Section 2251(a) explicitly covers "any visual depiction" of sexually-explicit conduct. The use of the word "any" before the phrase "visual depiction" in § 2251(a) evidences Congress's intent to broadly criminalize the dissemination of *any* visual image of child pornography, regardless of the means by which it was generated.  *See, e.g., Massachusetts v. EPA*, 549 U.S. 49, 528-29 (2007) (observing that Congress's repeated use of the word "any" underscores an intent to embrace all types of a particular matter); *see also Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 131 (2002) ("As we have explained, the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind." (internal quotation marks and citation omitted)).  Indeed, Nichols concedes in

4

No. 09-30487

his reply brief that Congress did not intend for the examples of visual depictions in § 2256(5) to be exhaustive. The plain meaning of "visual depiction" clearly encompasses a video that could be viewed—perceived visually—by someone remotely.

Instead, Nichols argues that because the statute was subsequently amended in 2008 to expressly criminalize the transmission of live visual depictions of sexually-explicit conduct, such conduct could not have been covered by the 2006 statute. We find this argument similarly misguided.

In 2008, Congress amended § 2251(a) to cover "any sexually explicit conduct for the purpose of producing any visual depiction of such conduct *or for the purpose of transmitting a live visual depiction of such conduct* . . ." Protect Our Children Act of 2008, Pub. L. No. 110-401, § 301, 122 Stat. 4229, 4242 (emphasis added). Congress also amended § 2256(5), which defines "visual depiction" to include "undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image that has been transmitted by any means, *whether or not stored in a permanent format*." Protect Our Children Act of 2008, § 302, 122 Stat. at 4242 (emphasis added).

Nichols asserts that Congress was not merely clarifying the scope of § 2251(a) by amending the statute to include the act of transmitting a live visual depiction, but creating a wholly new type of crime distinct from the act of producing a visual depiction. But no principled distinction exists between "producing" a visual image and "transmitting" data capable of being converted into a visual image. Section 2256(3) of the statute states that "'producing' means producing, directing, manufacturing, issuing, publishing, or advertising." Both before and after the 2008 amendment, § 2256(5) defined "visual depiction" to include "data stored . . . by electronic means which is *capable of conversion into a visual image*." Thus, the transmission of live video feed that causes a visual

5

image to appear on a remote computer screen is a means of producing a visual depiction. *See United States v. Smith*, 795 F.2d 841, 846 (9th Cir. 1986) ("Section 2251(a) does not require the *actual* production of a visual depiction, merely the enticement of minors '*for the purpose of producing*' a visual depiction of sexually explicit conduct. Whether the film involved here had actually reached the point of 'visual depiction' or not, Smith's use of the girls was clearly 'for the purpose of producing' such visual depictions.").

The fact that Congress later amended the statute to clarify that live video transmissions are prohibited by § 2251(a) does not mean that the statute did not cover such transmissions at the time of Nichols's offense. *See United States v. Alpers*, 338 U.S. 680, 681-84 (1950) (rejecting the defendant's argument that a subsequent amendment to include motion pictures within the reach of an obscenity statute "evidenced an intent that obscene matter not specifically added was without the prohibition of the statute" and concluding that the amendment more likely indicated that Congress wanted to make "doubly sure that motion-picture film was within the Act, and was concerned with nothing more or less"); *see also United States v. Hockings*, 129 F.3d 1069, 1072 (9th Cir. 1997) ("Congress may amend a statute simply to clarify existing law, to correct a misinterpretation, or to overrule wrongly decided cases. Thus, an amendment to a statute does not necessarily indicate that the unamended statute means the opposite." (quotation marks and citation omitted)).[2]

---

[2] The *Alpers* court explicitly rejected the defendant's reliance on the rule of *ejusdem generis* because the application of the rule would defeat the "obvious purpose" of the legislation: "to prevent the channels of interstate commerce from being used to disseminate any matter that, in its essential nature, communicates obscene, lewd, lascivious or filthy ideas." 338 U.S. at 683. Nichols's cursory invocation of the rule of *esjudem generis* in the present action fails for the same reason. Section 2251(a) was also intended to be part of "a comprehensive statute, which should not be constricted by a mechanical rule of construction." *Id*. at 684.

No. 09-30487

Because we find no statutory ambiguity in the meaning of the phrase "any visual depiction," we need not address Nichols' "rule of lenity" argument. *See Muscarello v. United States*, 524 U.S. 125, 138-39 (1998) (noting that the rule of lenity applies only if there is "grievous ambiguity or uncertainty in the statute" (quotation marks and citations omitted)).

Even if we harbored some doubt on this matter, we observe that no other court had construed § 2251(a) to exclude live transmissions of video feed at the time the district court accepted Nichols's guilty plea. While this fact alone does not preclude a finding of plain error, *United States v. Spruill*, 292 F.3d 207, 215 n.10 (5th Cir. 2002), we decline to find plain error where, "even now after full briefing . . . the error is not plain or obvious, indeed it is most uncertain whether there was any error at all." *United States v. Ellis*, 564 F.3d 370, 377 (5th Cir.), *cert. denied*, 130 S. Ct. 371 (2009).

## IV. Conclusion

For the foregoing reasons, we hold that the district court did not commit plain error in determining that a sufficient factual basis existed to show that Nichols committed the crime of sexual exploitation of a child. AFFIRMED.