RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0064p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

                    *Plaintiff-Appellee*,

      *v.*

MARK DOUGLAS GOULD,

                    *Defendant-Appellant*.

No. 20-5284

─────────────────

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 1:19-cr-00039-1—Curtis L. Collier, District Judge.

Argued: April 29, 2021

Decided and Filed: April 7, 2022

Before: GUY, DONALD, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Travis A. Rossman, ROSSMAN LAW, PLLC, Barbourville, Kentucky, for Appellant. Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Travis A. Rossman, ROSSMAN LAW, PLLC, Barbourville, Kentucky, for Appellant. Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, James T. Brooks, UNITED STATES ATTORNEY'S OFFICE, Chattanooga, Tennessee, for Appellee.

DONALD, J., delivered the opinion of the court in which MURPHY, J., joined. GUY, J. (pp. 13–19), delivered a separate opinion concurring in part and in the judgment.

———————————

**OPINION**

———————————

BERNICE BOUIE DONALD, Circuit Judge.  This case presents this Court with two purely legal questions: (1) whether a FaceTime call constitutes a "visual depiction" under U.S.S.G. § 2G1.3(c)(1), and (2) whether responding to a notice or advertisement "involved" "offering or seeking by notice or advertisement" under that same provision.  The district court found that a FaceTime call does constitute a "visual depiction" and that the provision is broad enough to cover responding to a notice or advertisement.  For the following reasons, we **AFFIRM**.

## I.  BACKGROUND

### A.	Gould Responds to Advertisement for Child Pornography

As described in the Presentence Report and Plea Agreement, in 2018 Defendant-Appellant Mark Gould responded to an online advertisement that offered to allow someone to "engage in a live online session with an 8-year-old in exchange for child pornography."  That advertisement included a photo of a minor.  Gould initiated the conversation, writing: "Hey I saw your daughter in the tub.  I would live [sic] to facetime with you two.  Hit me up thanks."  Gould later wrote, "[I]f you want to make me the [happiest] guy [on] the planet, [I] would love to facetime with your daughter."  Gould offered to send money to the individual through PayPal or Apple Pay.  At this point, Gould was speaking to a real individual, but law enforcement later apprehended that person.  Gould then began speaking with an undercover agent from the Department of Homeland Security who had assumed the arrested person's online identity.  The agent offered to let "his" minor daughter have sex with Gould, explaining that he would "video" the encounter.  Gould replied, "That sounds amazing I would pay for that:).  Can I FaceTime with her sometime?"

Throughout December, Gould sent the undercover agent links to child pornography, as well as Gould's password to a cloud account with thousands of images of minors, including toddlers.  In discussing his hoped-for visit with the undercover agent's "daughter," Gould

explained that "I would gladly do your daughter while you taped it" and that "[t]he thought of being able to see your daughter on [c]am is like a dream for me." Through December and January, the two continued to discuss Gould's planned travel from the State of Washington to Tennessee. On January 7, 2019, the undercover agent told Gould that he would like to "video" Gould's encounter with his daughter, to which Gould "indicated he had some HD camcorders, but that his phone was amazing." Days later, Gould said that "he had a good editing program in order to blur faces out on videos."

On January 24, 2019, Gould flew to Tennessee where he met with an undercover agent in Chattanooga. Gould presented a blood test indicating he had no sexually-transmitted diseases. The undercover agent asked Gould "if he would like to take a video home with him[,] and [Gould] stated they had not discussed that." At that point, law enforcement arrested Gould. Under interrogation, Gould admitted that he responded to the advertisement and confirmed that he saw the images of the 8-year-old in that initial advertisement.

## B.    Procedural History

On February 26, 2019, Gould was charged with Enticing a Minor to Engage in Sexual Activity in violation of 18 U.S.C. § 2422(b). Gould reached a plea agreement with the government, admitting that he "knowingly use[d] a facility or means of interstate commerce to attempt to persuade, induce, entice or coerce an individual who has not attained the age of 18 years, to engage in sexual activity[.]" The charge carried a mandatory minimum sentence of ten years and a maximum sentence of life imprisonment. The plea agreement noted that the government would not oppose a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). The agreement also noted that if Gould's offense level were sixteen or greater and if Gould were awarded a two-level reduction under § 3E1.1(a) (for acceptance of responsibility), the government would move for an additional one-point reduction under § 3E1.1(b) (for timely notice of intent to plead guilty). The plea agreement contained no appellate waiver.

After noting his agreement with the factual basis found in the plea agreement, Gould pleaded guilty. There were ultimately three PSRs issued. The first PSR assigned a base offense

level of 32, using the cross reference at U.S.S.G. § 2G1.3(c)(1) "because the offense involved seeking by notice a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." This base offense level (under U.S.S.G. § 2G2.1(a)) was four levels higher than the base offense level that would have otherwise applied without the cross reference. *See* U.S.S.G. § 2G1.3(a)(3). The PSR then included three enhancements. *First*, a four-level enhancement applied under § 2G2.1(b)(1)(A) because the offense involved a minor under the age of twelve. *Second*, a two-level enhancement applied under § 2G2.1(b)(3) because Gould knowingly distributed child pornography in the course of the offense. *Third*, a two-level enhancement applied under § 2G2.1(b)(6)(B)(ii) because the offense involved the use of a computer to solicit participation with a minor in sexually explicit conduct. This resulted in an adjusted offense level of 40. With a two-level reduction under § 3E1.1(a) and a one-level reduction under § 3E1.1(b), Gould's total offense level was 37. Gould had no criminal history, resulting in a criminal history category of I, which led to a Guidelines range of 210 to 262 months.

Days later, probation issued a Revised PSR, now adding a four-level enhancement under § 2G2.1(b)(4) because the "offense involved material that portrayed an infant or toddler[.]" Gould objected to the Revised PSR on three grounds. *First*, Gould argued that the cross reference at § 2G1.3(c)(1) did not apply because Gould responded to the notice with the intent to communicate via FaceTime, not to "produce" a "visual depiction" within the meaning of § 2G1.3(c)(1). In response, the Probation Office said that it considers a live transmission, e.g., a FaceTime call, to be a "visual depiction." *Second*, Gould argued that § 2G1.3(c)(1) was inapplicable because "Gould did not place any notice himself, and the acts of others should not be attributed to him under these circumstances according to U.S.S.G. § 1B1.3(a)." The Probation Office responded that the cross reference applies because Gould "directly responded" to the advertisement and that the cross reference merely requires that the offense "involve" a notice or advertisement. *Third*, Gould objected to the four-level enhancement under § 2G2.1(b)(4), to which the Probation Office responded that Gould distributed numerous links to child pornography, links that included images of toddlers.

Probation then issued the third and final PSR on March 2, 2020.  This version included the same base offense level of 32 and all four enhancements, resulting in a total offense level of 44.  The report included the same three-level reduction for acceptance of responsibility and timely notice of intent to plead, and with Gould's criminal history category of I, the resulting Guidelines range was 324 to 405 months.

At sentencing, Gould made the same three arguments.  As to the FaceTime argument, Gould's counsel argued that "there's nothing tangible left at the end of a FaceTime call[;]" rather, "[i]t is the transmission of a live event."  The district court, though noting that Gould's arguments were "interesting" and "not without some degree of logic," nonetheless rejected the arguments, finding that Gould's arguments conflicted with the "commonly understood meaning of the key words" in the cross reference.  The district court concluded that "producing a visual depiction" under the cross reference included creating a live transmission of the target; by way of example, the district court analogized to "producing" a Broadway play—it is "produced," albeit not recorded.  As to Gould's second argument—that he merely *responded* to the advertisement— the district court rejected that argument because the cross reference requires only that the offense "involve" offering or seeking by notice or advertisement, and that when Gould responded to the advertisement, that alone is "evidence of his interest in seeking out such materials."  As to Gould's third and final argument about the enhancement under § 2G2.1(b)(4), the district court found that Gould's offense "involved" material portraying toddlers because Gould's sending of material with toddlers (done throughout the course of Gould's ongoing conversations with the undercover agent) was done to gain trust with the recipient and to entice the other individual to let Gould FaceTime with the child.

Having rejected Gould's three objections, the district court still granted a downward departure under U.S.S.G. § 5K1.1, reducing his offense level to 37.  With a resulting Guidelines range of 210 to 262 months, the district court ultimately sentenced Gould to the bottom of that range, 210 months.  Gould then timely appealed.

## II. ANALYSIS

### A.    Standard of Review

Because Gould challenges the application of the § 2G1.3(c)(1) cross reference and the resulting calculation of the Guidelines range, Gould is challenging the procedural reasonableness of his sentence, which we would normally review for abuse of discretion. *United States v. Jeter*, 721 F.3d 746, 755 (6th Cir. 2013). This Court, however, has previously noted that a "district court's interpretations of the Sentencing Guidelines are reviewed de novo." *United States v. Canestraro*, 282 F.3d 427, 431 (6th Cir. 2002) (citing *United States v. Brown*, 147 F.3d 477, 485 (6th Cir. 1998)). Although we deferentially review the application of the Guidelines to undisputed facts, when the issue is a "purely legal matter" that concerns the meaning of the Guidelines, we review *de novo*. *Id.* (quoting *Buford v. United States*, 532 U.S. 59, 65 (2001)); *see also United States v. Murphy*, 241 F.3d 447, 458 (6th Cir. 2001) ("Questions involving the interpretation of the guidelines are legal questions that this Court reviews *de novo*.").[1]

### B.    Visual Depiction

The relevant cross reference here, § 2G1.3(c)(1), says that § 2G2.1 (which increases the offense level calculations) applies if "the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct[.]" U.S.S.G. § 2G1.3(c)(1). As applicable to both legal questions raised here, Application Note 5 to § 2G1.3 explains that "[t]he cross reference in subsection (c)(1) is to be construed broadly[.]" *Id.* cmt. n.5(A).

---

[1]There is some dispute as to the relevant standard of review. Gould argues that we review *de novo* these "properly preserved legal issue[s]." The government, on the other hand, cites to *United States v. Taylor*, 648 F.3d 417 (6th Cir. 2011), for the proposition that we must afford "due deference" to the district court's determination that a cross reference applies. However, in *Taylor*, this Court was considering a "fact-bound question" as to whether there was a nexus between the firearm and the felony in considering whether the cross reference at U.S.S.G. § 2K2.1(b)(6) applied. *Id.* at 431. The Court thus applied a deferential standard to the determination that the firearm was used or possessed "in connection with" the felony, resulting in the application of the enhancement. *Id.* at 431-32. That, however, was a decidedly fact-bound question. The Court explained that when the challenge to the application of a cross reference is "strictly a question of law," we review *de novo*. *Id.* at 431 (citing *United States v. Hyler*, 308 F. App'x 962, 964-67 (6th Cir. 2009)). Such is the case here; our determination could be decided the same even on an entirely different set of facts. We are not asking whether the district court erred in determining that *these* facts merited the application of the cross reference. Rather, we are asking whether the language of the cross reference means a certain thing. That is a question of law we review *de novo*.

Gould's first argument against the application of this cross reference is that live video transmissions (like a FaceTime call) are not visual depictions because they are "not stored in a permanent format." The government responds in two ways. First, the government contends that the plain meaning of "visual depiction" includes no permanency requirement. Second, even with that dispute aside, the government maintains that Gould's conduct "also involved seeking a video recording of his planned sexual encounter with the girl, and Gould does not dispute that such a recording would qualify as a 'visual depiction' under § 2G1.3(c)(1)."

The Application Notes to § 2G1.3(c)(1) do not define "visual depiction," and Gould rightfully points out that the Sixth Circuit has yet to address this precise issue. In interpreting the Sentencing Guidelines, as the panel here must do, "the traditional canons of statutory interpretation apply." *United States v. Sands*, 948 F.3d 709, 713 (6th Cir. 2020) (quoting *United States v. Jackson*, 635 F.3d 205, 209 (6th Cir. 2011)). Under those canons, we begin with the plain meaning of the relevant text; if that language is unambiguous, our analysis begins and ends there. *Id.* (citing *Perez v. Postal Police Officers Ass'n*, 736 F.3d 736, 740 (6th Cir. 2013)).

The government's plain-meaning arguments point out that the term "depiction" is "commonly understood as 'a representation in words or images of someone or something.'" Appellee Br. at 14 (quoting *Depiction*, Merriam-Webster Dictionary (2020)).[2] Gould's counsel at the sentencing hearing also described a depiction simply as "something that people see."[3] The term "visual," the government next argues, "simply means that the depiction must be one that is 'attained or maintained by sight.'" *Id.* at 15 (quoting *Visual*, Merriam-Webster Dictionary (2020)). Put together, then, a "visual depiction" is simply a visible representation of someone or something.

---

[2]When a statute or Guideline fails to define a word, courts should consult the ordinary meanings contained in both general and legal dictionaries. *See, e.g.*, *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995); *FDIC v. Meyer*, 510 U.S. 471, 476 (1994).

[3]The district court, at one point, asserted that the common understanding of "depiction" was "the capture of something for which you were not a firsthand witness[.]" If this were the case—that the term includes a secondhand/firsthand distinction—then a FaceTime call would surely qualify as a "depiction" given that it transmits a video image to the witness who sees secondhand whatever is happening on the screen. We disagree to the extent that the plain meaning of "depiction" does not imply that a person was not present for the "showing."

Nothing in that interpretation suggests that a "visual depiction" must be stored in a permanent format.  In other words, nothing in the common-sense understanding of the individual words (visual, depiction) nor the combined phrase (visual depiction) implies a requirement of any permanency, contrary to Gould's arguments.  In support, the government points to 18 U.S.C. § 2256(5), which defines "visual depiction" as including various forms of media "whether or not stored in a permanent format."  18 U.S.C. § 2256(5).  True, as Gould later notes, this definition (applicable to Chapter 110 of Title 18 in the U.S. Code) does not apply to the statute under which Gould was convicted (which is located in Chapter 117), but the definition does illustrate that the term "visual depiction" itself does not exclude impermanent depictions.  *See also United States v. Lynn*, 636 F.3d 1127, 1135 (9th Cir. 2011) (discussing the ordinary meaning of "visual depiction" as defined in another chapter and explaining that the "ordinary meaning" of the term is not "tied or fixed to a particular medium");[4] *United States v. Nichols*, 371 F. App'x 546, 548 (5th Cir. 2010) (per curiam) ("The plain meaning of 'visual depiction' clearly encompasses a video that could be viewed—perceived visually—by someone remotely.").  Nor does the phrase "for the purpose of producing" in the cross reference tack on any sort of permanency requirement; as the district court here aptly noted, a Broadway "production" is "produced," even though the shows are intended for live viewing.

*In sum*, the plain meaning of the cross reference does not require the "visual depiction" be a sort that is recorded in any permanent format.  Because the language of the cross reference is not ambiguous, and because Application Note 5 to the cross reference explains that courts are to "construe[] broadly" the cross reference, we affirm the district court's conclusion that the cross reference properly applied to Gould's offense.  Because we decide the matter on the plain language, we need not address the parties' other arguments regarding Guidelines construction or congressional intent.  *Herman v. Fabri-Ctrs. of Am., Inc.*, 308 F.3d 580, 585 (6th Cir. 2002) ("When interpreting a statute, this Court must begin with its plain language, and may resort to a

---

[4]Although here the Ninth Circuit was referring to the definition of "visual depiction" in 18 U.S.C. § 2256 (which covers an inapplicable chapter), the court was explaining that nothing in § 2256 contravened the "ordinary meaning" of visual depiction, an ordinary meaning that did not tie "visual depiction" to any particular medium.  In other words, though the court's broader point was to clarify the definition of "visual depiction" in § 2256, its point here about the ordinary meaning was not specific to that statute and is, therefore, at least persuasive evidence as to the plain meaning of "visual depiction."

review of congressional intent or legislative history *only* when the language of the statute is not clear.") (emphasis added).

### C.    Seeking by Notice or Advertisement

Gould's second argument is that he did not "offer[] or seek[] by notice or advertisement" under § 2G1.3(c)(1) because he *responded* to an advertisement "that had already been placed before he commenced the offense of conviction." Gould concedes the cross reference is written broadly—it applies if the offense *involved* such conduct—but nonetheless argues that because the other individual placed the advertisement *before* Gould committed the offense, the placement of that advertisement was not relevant conduct to Gould's offense. Gould also concedes that a "person who responds to an existing advertisement may be 'seeking[,]'" but he claims that the "person would not be 'seeking by notice or advertisement.'" Gould interprets the phrase "seeking by notice or advertisement" as, on its face, limited to individuals who *placed* the notice or advertisement to try to gain access to a minor. In other words, Gould argues that the cross reference requires that the defendant play "an active role in placing the advertisement, not a passive role in responding to the advertisement."

The government responds with two arguments: (1) Gould himself sent notices (in the form of emails to an undercover agent) seeking a minor to engage in sexually-explicit conduct, and (2) the plain language of the cross reference applies to someone who responds to a notice or advertisement because the cross reference uses the broad term "involved." The district court denied Gould's arguments, finding that "when [Gould] responded to an ad, that's evidence of his interest in seeking out such materials," which thereby fits plainly within the language of the cross reference. The district court found no basis to distinguish between the person who placed the ad and the person who responded to the ad.

Here, we do not reach the questions of (1) whether Gould was a person "seeking by" advertisement even though he played only a purportedly passive role in responding to the preexisting advertisement; or (2) whether Gould himself sent "notices" in his communications with the other individuals (the initial offender and the subsequent undercover agent). Rather, our

analysis here is short.  It is worth considering again the language of the cross reference.  The cross reference instructs courts to apply § 2G2.1's heightened offense level calculations:

> [i]f the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct[.]

U.S.S.G. § 2G1.3(c)(1).  At bottom, Gould's offense patently *involved* offering by advertisement a minor to engage in sexually explicit conduct.

Crucial and determinative here is the cross reference's use of the word "involved."  Circuit courts have repeatedly held—and Gould himself concedes (Reply Br. at 8)—that the term "involve" is expansive.  *See, e.g.*, *United States v. Eason*, 919 F.3d 385, 391 (6th Cir. 2019) (defining "involving" as "relat[ing] to or connected with" though noting that the "relationship must not be too remote or tangential") (quoting *United States v. McKenney*, 450 F.3d 39, 45 (1st Cir. 2006)); *United States v. Myers*, 925 F.3d 881, 884 (6th Cir. 2019) (same); *see also United States v. King*, 325 F.3d 110, 113 (2d Cir. 2003) ("The word 'involving' has expansive connotations[.]"); *United States v. Vickers*, 540 F.3d 356, 365 (5th Cir. 2008) ("'[I]nvolving' means 'related to or connected with.'") (citation omitted)); *United States v. Gibbs*, 656 F.3d 180, 184 (3d Cir. 2011) ("The plain meaning of 'involve' is 'to relate closely' or to 'connect closely.'") (citation omitted).

To be sure, courts have recognized that the dictionary definition of "involved" can have both narrower and broader scopes.  More narrowly, the word requires one item to necessarily "contain as a part" or "include" another item.  *See McKenney*, 450 F.3d at 42 (citing The American Heritage Dictionary 921 (4th ed. 2000) and Webster's Third New International Dictionary 1191 (1993)); *see also Shular v. United States*, 140 S. Ct. 779, 785 (2020).  More broadly, the word requires merely that one item "relate closely" to the other item.  *See McKenney*, 450 F.3d at 43 (citation omitted); *see also Eason*, 919 F.3d at 391.  Application Note 5's instruction that § 2G1.3(c)(1) "be construed broadly"[5] would suggest that we should opt for the broader construction.  U.S.S.G. § 2G1.3 cmt. n.5(A).

---

[5]We note here that we need not reach Gould's *Havis* argument against the use of Application Note 5. Application Note 5 says that the cross reference covers "offering or seeking by notice, advertisement *or other*

But we need not choose between the two definitions now. Under either definition, Gould's conduct "involved" an offer by advertisement of a minor to engage in sexually explicit conduct for the purposes of producing a visual depiction. The posting of the advertisement and Gould's response to that advertisement were "relate[d] closely." *Gibbs*, 656 F.3d at 184 (citation omitted). Nor is the relationship between these two acts "too remote or tangential." *Eason*, 919 F.3d at 391 (citation omitted). Indeed, Gould's conduct of responding to an offer by advertisement "necessarily requir[ed]" an offering by advertisement. *Shular*, 140 S. Ct. at 785 (citation omitted). Gould's conduct could not have happened without the posting of the advertisement; that is to say, Gould could not have responded to the advertisement if the other individual never placed that advertisement.

To the extent Gould argues that his offense could not have involved such conduct because the other individual's placement of the advertisement occurred *before* Gould engaged with the advertisement, that argument is unpersuasive because any response to an advertisement, by definition, necessarily occurs after the placement of the advertisement. Gould's citation on this point to *United States v. Schock*, 862 F.3d 563 (6th Cir. 2017), is inapposite; there, this Court held that the sexual exploitation of a minor that occurred nearly one year after the charged offense was not relevant conduct for sentencing purposes as to that charged offense (the sexual exploitation of a different minor). *Id.* at 567–69. But those two events—the two separate exploitations—were not necessarily related in the same sense that the posting of and responding to an advertisement are. In any event, the timing of the *posting* of the advertisement is irrelevant. The advertisement could have been posted a year in advance, but that does not change the fact that Gould's offense *involved* an advertisement offering a minor to engage in sexually explicit

---

*method*[.]" U.S.S.G. § 2G1.3(c)(1) cmt. n. 5(A) (emphasis added). Gould argues that applying Application Note 5's use of the phrase "or other method" would improperly expand the meaning of the cross reference itself, in violation of *United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019) (en banc) (per curiam) ("Commentary binds courts only 'if the guideline which the commentary interprets will bear the construction.'") (quoting *Stinson v. United States*, 508 U.S. 36, 46 (1993)). Because we do not rely here on the "other method" phrase in Application Note 5, instead relying only on the Note's general instruction that the cross reference be "construed broadly"—a construction which § 2G1.3(c)(1) would surely bear, *Stinson*, 508 U.S. at 46—Gould's *Havis* argument carries no weight.

conduct for purposes of producing a visual depiction. The other individual placed the ad offering; Gould responded. Gould's conduct necessarily involved the placement of the ad.[6]

### III.  CONCLUSION

*First*, the district court correctly decided that a FaceTime call constitutes a "visual depiction" under the cross reference at U.S.S.G. § 2G1.3(c)(1). The plain language alone leads us to affirm in that regard. *Second*, Gould's conduct involved offering by advertisement insofar as the unnamed individual placed the advertisement offering a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction, and Gould responded. The plain meaning of the term "involved" likewise leads us to that conclusion. For those two reasons, the district court properly calculated Gould's Guidelines range by applying § 2G1.3(c)(1), and we therefore **AFFIRM** his sentence.

---

[6]To make the point clear, we do not address the government's alternative arguments that (1) the cross reference applies because Gould was "seeking by notice or advertisement" or (2) that Gould himself placed a "notice" in his one-on-one communication with the other individual (and then the undercover agent). We reach neither because the plain language—Gould's conduct *involved* the placing of the advertisement—covers his offense of conviction and renders the cross reference applicable.

---

**CONCURRING IN PART AND IN THE JUDGMENT**

---

RALPH B. GUY, JR., Circuit Judge, concurring in part and concurring in the judgment. I join Part II.C. of the majority's opinion, concluding that Gould's offense "involved" an "advertisement" "offering . . . a minor to engage in sexually explicit conduct," USSG § 2G1.3(c)(1), because Gould responded to an online advertisement of that nature. Although I also agree with the ultimate conclusion in Part II.B. that a FaceTime call is a "visual depiction" under the same provision, I disagree with the majority opinion's analysis of the issue. The opinion begins and ends its analysis with the dictionary definition and concludes that "we need not address the parties' other arguments regarding *Guidelines construction* or congressional intent." (Maj. Op. 8 (emphasis added)). There is no mention of Gould's primary arguments, which rely on established canons of interpretation. (Appellant Br. 11, 14-18; Reply Br. 1, 3-5).

"In interpreting the Sentencing Guidelines, the traditional canons of statutory interpretation apply." *United States v. Sands*, 948 F.3d 709, 713 (6th Cir. 2020) (quoting *United States v. Jackson*, 635 F.3d 205, 209 (6th Cir. 2011)); *see, e.g.*, *United States v. Pineda-Duarte*, 933 F.3d 519, 523-24 (6th Cir. 2019); *United States v. Bonds*, 839 F.3d 524, 529 & n.5 (6th Cir. 2016); *United States v. Haas*, 986 F.3d 467, 479-80 (4th Cir. 2021).

Under those canons, the Supreme Court has repeatedly admonished that "although dictionary definitions . . . bear consideration, they are not dispositive." *Yates v. United States*, 574 U.S. 528, 538 (2015). As the Court has explained, "stopping there would ignore the rule that, because statutes are not read as a collection of isolated phrases, . . . '[a] word in a statute may or may not extend to the outer limits of its definitional possibilities.'" *Abuelhawa v. United States*, 556 U.S. 816, 819-20 (2009) (internal citations omitted) (quoting *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006)); *id.* at 819-24 (concluding that although the "plain meaning" of "'facilitating' drug distribution" could embrace phone calls to arrange cocaine purchases, other principles dictated that the phrase did not extend that far); *see also Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995).

Instead, "the plainness or ambiguity of statutory language is determined not only by reference to the language itself, but as well by the specific context in which that language is used, and the broader context of the statute as a whole." *Yates*, 574 U.S. at 537 (brackets omitted) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)); *see also Tyler v. Cain*, 533 U.S. 656, 662 (2001). That means we do not declare that a provision is clear until "after" we "apply 'established principles of interpretation.'" *Tiger Lily, LLC v. U.S. Dep't of Hous. & Urb. Dev.*, 992 F.3d 518, 522 (6th Cir. 2021) (order) (quoting *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 112 (2014)).

Here, Gould points out that the provision at issue—§ 2G1.3(c)(1)—includes *only* "visual depiction," whereas a separate and nearly identical provision—§ 2G2.2(c)(1)—includes "live visual depiction" *and* "visual depiction." Gould also highlights that the definitions provided in § 2G2.1 and § 2G2.2 define "material" to include "a visual depiction, as defined in 18 U.S.C. § 2256." USSG § 2G2.1, comment., n.1; *accord* USSG § 2G2.2, comment., n.1; *cf.* 18 U.S.C. § 2256(5). But § 2G1.3 does not define "material" or "visual depiction." Based on the textual differences, Gould invokes several established canons of interpretation to argue that a FaceTime call is not a "visual depiction" under § 2G1.3(c)(1). (Appellant Br. 11, 14-18; Reply Br. 1, 3-5).

*First*, Gould argues that the "inclusion of a live transmission in [§ 2G2.2(c)(1)] implies intentional exclusion of a live transmission when only the term 'visual depiction' triggers [§ 2G1.3(c)(1)]." (Appellant Br. 15; *see* Reply Br. 3-4). Gould's argument implicates "[a] familiar principle of [Guidelines] construction." *See Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006). "Where [the Commission] includes particular language in one section of [the Guidelines] but omits it in another section of the same [part of the Guidelines]," as in this case, "it is generally presumed that [the Commission] acts intentionally and purposely in the disparate inclusion or exclusion." *See id.* (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). Here, § 2G2.2 and § 2G1.3 are both under Part G of the Guidelines ("Offenses Involving Commercial Sex Acts, Sexual Exploitation of Minors, and Obscenity").

*Second*, Gould contends that if "visual depiction" includes a "live visual depiction," then the Commission's addition of "live visual depiction" in § 2G2.2 would be superfluous. (Appellant Br. 15; Reply Br. 1). Indeed, a court "ordinarily assumes 'that identical words used

in different parts of the same act are intended to have the same meaning.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 319 (2014) (citation omitted); *see Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1512 (2019). And it is a cardinal rule that the Guidelines "should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous." *See Corley v. United States*, 556 U.S. 303, 314 (2009) (citation omitted).

*Third*, both parties acknowledge that the relevant textual differences between § 2G1.3(c)(1) and § 2G2.2(c)(1) are due to the amendments to *only* § 2G2.2 in 2009—before then, both provisions contained the same language. (Reply Br. 4; Gov't Br. 20-22); *see* USSG App. C, amend. 733 (2009). Gould therefore argues that because the Commission made changes to § 2G2.2, but did not include the changes in § 2G1.3, "[t]his omission must have been intentional and the differences must be given effect." (Reply Br. 4). Gould again has a point, as this implicates yet another canon of interpretation. "When [the Commission] amends [the Guidelines], courts must 'presume it intends [the change] to have real and substantial effect." *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (quoting *Stone v. INS*, 514 U.S. 386, 397 (1995)); *see also Field v. Mans*, 516 U.S. 59, 75 (1995) ("The more apparently deliberate the contrast, the stronger the [negative] inference[.]").

These arguments do not present easy answers. But these "internal inconsistencies in the [Guidelines] must be dealt with." *United States v. Turkette*, 452 U.S. 576, 580 (1981); *see also United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240-41 (1989); Gov't Br. 23 (citing *United States v. Wynn*, 579 F.3d 567, 574-75 (6th Cir. 2009) (concluding that based on the differences between the commentary notes of § 2L1.2 and § 4B1.2 the "logical conclusion . . . is that the Sentencing Commission did not intend for 'forcible sex offenses' under § 4B1.2 to be defined the same way as 'forcible sex offenses' under § 2L1.2")). The nature of the crime here is no reason to ignore Gould's arguments.

His arguments, however, are not enough to carry the day. "[A]ny canon of statutory interpretation . . . can assuredly be overcome by other indicia of meaning." *Lockhart v. United States*, 577 U.S. 347, 352 (2016); *see, e.g.*, *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385-86 (2013); *Util. Air Regul. Grp.*, 573 U.S. at 320. "[T]here is more here, showing why [Gould's]

negative pregnant argument should not be elevated to the level of interpretive trump card." *Field*, 516 U.S. at 67.

This is true for at least two reasons. *First*, Gould was convicted under 18 U.S.C. § 2422 for attempting to entice a minor to engage in "any sexual activity for which any person can be charged with a criminal offense." That phrase is defined in 18 U.S.C. § 2427, which is located in Chapter 117—the same chapter containing Gould's statute of conviction. In § 2427, it states: "In this chapter, the [phrase] . . . includes the production of child pornography, as defined in section 2256(8)." In turn, § 2256(8) defines "child pornography" as "*any visual depiction*, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct" involving a minor. (Emphasis added). "Visual depiction," is then defined in § 2256(5) to include "data which is capable of conversion into a visual image that has been *transmitted by any means, whether or not stored in a permanent format*." (Emphasis added).

Thus, following Gould's statute of conviction down "a definitional rabbit-hole," *United States v. Garth*, 965 F.3d 493, 497 (6th Cir. 2020), leads us to Congress's definition of "visual depiction" in § 2256(5). And the Guidelines must be "consistent with all pertinent provisions of any Federal statute." 28 U.S.C. § 994(a); *see also United States v. Havis*, 929 F.3d 317, 319 (6th Cir. 2019) (en banc) (Sutton, J., concurring in the denial of en banc reconsideration) ("Though [the Guidelines] do not define distribution, I see no reason to give the word . . . a different meaning from the one in the Controlled Substances Act [(CSA)]."); *United States v. Jackson*, 984 F.3d 507, 512 (6th Cir. 2021) ("[W]e routinely utilize the CSA (even after *Havis*) in defining the relevant conduct covered by the Guidelines."). That the changes to § 2G2.2 were not also included in § 2G1.3 simply means that the Commission overlooked the reference to "visual depiction" in the identical language and structure of § 2G1.3(c)(1) and failed to appreciate that Gould's statute of conviction (18 U.S.C. § 2422) incorporates Congress's definition of "visual depiction" in § 2256(5). *See United States v. Wilson*, 503 U.S. 333, 336 (1992) (attributing no significance to amendments deleting a reference to the Attorney General; the reference "was simply lost in the shuffle" of a comprehensive statutory revision).

It makes no sense to conclude that the Commission intended § 2G1.3 to have a narrower definition of "visual depiction" than that incorporated by Gould's statute of conviction. *See id.* at 334 ("[A]bsurd results are to be avoided."). So regardless of any negative inference that we might typically draw from the inclusion of "live visual depiction" in § 2G2.2(c)(1) and the absence of that term in § 2G1.3(c)(1), the meaning of "visual depiction" under § 2G1.3(c)(1) should be the same as that in § 2256(5). A FaceTime call falls well within § 2256(5)'s broad definition.

With this understanding, the decision in *United States v. Wynn*, 579 F.3d 567 (6th Cir. 2009), does not favor Gould. There, the commentary notes of both § 2L1.2 and § 4B1.2 enumerated various offenses as per se "crimes of violence." *Wynn*, 579 F.3d at 574. The Commission had amended the commentary to § 2L1.2 but not § 4B1.2. Thus, this court concluded that the "logical conclusion . . . is that the Sentencing Commission did not intend for 'forcible sex offenses' under § 4B1.2 to be defined the same way as 'forcible sex offenses' under § 2L1.2." *Id.* at 574-75. But *Wynn* is distinguishable for at least two reasons. As noted, Gould's statute of conviction is linked to the definition of "visual depiction" in § 2256(5), and the Commission's definition must be consistent. Moreover, in *Wynn*, the court noted that even before the amendment, "§ 2L1.2's definition of 'crime of violence' ha[d] always expressly covered more sex crimes than § 4B1.2's definition," and thus there was "nothing irrational about the Sentencing Commission's decision to continue that approach with the 2008 amendment adding language to § 2L1.2 alone." *Id.* at 575. Here, however, § 2G1.3(c)(1) and § 2G2.2(c)(1) were identical until the 2009 amendments. It is doubtful that the Commission intended the two Guidelines to suddenly have different meanings and that it did so without any explanation.

*Second*, not all amendments are intended as substantive changes. For instance, the Supreme Court concluded that the words "book, pamphlet, picture, motion-picture film, . . . or other matter of indecent character" in the federal obscenity statute, 18 U.S.C. § 1462, covered phonograph records, not just "visual obscene matter." *United States v. Alpers*, 338 U.S. 680, 682-83 (1950). To apply the canon of *ejusdem generis*, the Court reasoned, would "defeat the obvious purpose" of "a comprehensive statute." *Id.* at 683 (citation omitted). The Court was also "not persuaded that Congress, by adding motion-picture film to the specific provisions of

the statute, evidenced an intent that obscene matter not specifically added was without the prohibition of the statute," and instead the amendment merely demonstrated that "Congress was preoccupied with making doubly sure that motion-picture film was within the Act, and was concerned with nothing more or less." *Id.* at 684-85.

In the same vein, the government cites cases standing for the proposition that when Congress amended § 2256(5)'s definition of "visual depiction" in 2008 by adding "data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format," *see* Pub. L. No. 110-401, § 302 (2008), this did not mean that such content was not covered by the pre-2008 definition. *See United States v. Nichols*, 371 F. App'x 546, 548-50 (5th Cir. 2010) ("The fact that Congress later amended the statute to clarify that live video transmissions are prohibited . . . does not mean that the statute did not cover such transmissions at the time of [defendant's] offense."); *see also United States v. Lynn*, 636 F.3d 1127, 1133-35 & n.8 (9th Cir. 2011); *United States v. Hockings*, 129 F.3d 1069, 1072 (9th Cir. 1997) (concluding that the 1996 amendments to § 2256, which added computer data to the definition of visual depiction, did not mean that the pre-1996 statute did not encompass GIF files); *United States v. Whiting*, 165 F.3d 631, 634 & n.3 (8th Cir 1999) (relying on *Hockings* to hold that even before § 2256(5) was amended in 1996, "images stored on computer disks were encompassed by the original definition of 'visual depiction'" in the statute).

Thus, if "Congress may amend a statute simply to clarify existing law," *Nichols*, 371 F. App'x at 549 (citation omitted), then so too may the Commission amend § 2G2.2 without intending to expand its scope, especially given that the Commission merely intended to follow Congress's amendments to § 2256(5), *see* USSG App. C, amend. 733. Similarly, the inclusion of "live visual depiction" in § 2G2.2(c)(1) is not superfluous. Rather, it operates to "remove doubt" that a "live visual depiction" is within § 2G2.2(c)(1). *See Marx*, 568 U.S. at 385 ("The canon against surplusage is not an absolute rule."). Given that it is reasonable to conclude that the changes to § 2G2.2 are not substantive, it follows that the absence of "live visual depiction" in § 2G1.3 does not cabin the meaning of visual depiction.

\*      \*      \*

For these reasons, I would conclude that a FaceTime call is a "visual depiction" for purposes of § 2G1.3(c)(1) and affirm Gould's sentence.